UNITED STATES of America ex rel. Theodore BAKER, Petitioner-Appellant,

v.

Frederick FINKBEINER, Warden, Pontiac Correctional Center, Respondent-Appellee.

No. 76–1918.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1977.

Decided March 17, 1977.

Rehearing and Rehearing En Banc Denied April 15, 1977.

See also, 7 Cir., 551 F.2d 185.

Thomas M. Peters, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Victor M. Pilolla, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before SWYGERT, TONE and WOOD, Circuit Judges.

SWYGERT, Circuit Judge.

In this case petitioner seeks a writ of habeas corpus because he was not told that he would have to serve a mandatory parole term at the time he agreed to plead guilty to state criminal charges. We hold that in the circumstances of petitioner's case the failure of the prosecutor and the trial court to advise him of the mandatory parole term created a defect of constitutional dimensions in his guilty plea. We therefore reverse the judgment of the district court denying the writ of habeas corpus.

I

On January 24, 1974 petitioner Theodore Baker pled guilty in the Circuit Court of Will County, Illinois to charges that he had committed armed violence in violation of Ill.Rev.Stat. Ch. 38, §§ 33A–2, 12–2(a)(1), and had violated the Illinois Hypodermic Syringes and Needles Act, Ill.Rev.Stat. Ch. 38, § 22–53. The guilty plea was entered pursuant to an agreement reached by Baker's court-appointed attorney and the prosecutor.

At the time Baker entered the plea, armed violence carried a penalty of one to three years' imprisonment followed by two years of mandatory parole. Ill.Rev.Stat. Ch. 38, §§ 33A–2, 33A–3, 1005–8–1(b)(5), 1005–8–1(e)(3). Violations of the Hypodermic Syringes and Needles Act carried a maximum penalty of one year in prison. Ill.Rev.Stat. Ch. 38, §§ 22–53, 1005–8–3. Under the terms of the agreement, Baker was to be sentenced to prison terms of one to two years on the armed violence charge and one year for violation of the Hypodermic Syringes and Needles Act. The two sentences were to run concurrently. However, he was not told by his attorney or the prosecutor before he accepted these terms that under Illinois law he would have to serve two years on parole after his prison term had expired.

During the proceedings in court in which the guilty plea was entered the trial judge attempted to advise Baker of the consequences of his action. The judge pointed out the minimum and maximum prison terms which could be imposed under the statutes, as well as the possibility of monetary fines. He noted that the guilty plea was the consequence of an agreement between Baker's attorney and the prosecutor. He had Baker's attorney describe the terms of the agreement and asked Baker whether he had agreed to those terms. Finally, he stated that he had previously reviewed the agreement with Baker's attorney and the prosecutor, and had informed them that if Baker pled guilty he would receive a sentence consistent with its terms. Neither the judge, the prosecutor, nor Baker's attorney told Baker during the hearing that a two year parole term following his prison term was statutorily required to be part of the sentence.

Baker was then incarcerated until September 23, 1974, when he was released on parole. He had served eight months of his two year prison sentence, and was given two months' credit for time spent in custody prior to his guilty plea. On November 17, 1974 he was taken into custody for violating parole, and was declared a parole violator on March 3, 1975.[1] He was released on parole again on September 20, 1976, with the parole term to continue until March 20, 1977.[2]

While he was in prison on the parole violation Baker filed a motion for a writ of habeas corpus, under 28 U.S.C. § 2254, in the United States District Court for the Northern District of Illinois. The basis for his claim was that he had not been informed of the mandatory two year parole term at the time he entered his guilty plea. The district court denied the motion on July 30, 1976 and Baker now appeals that judgment.[3]

II

Under 28 U.S.C. § 2254(a), a state prisoner may seek a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Baker contends that his guilty plea was involuntary because he did not know of the mandatory parole term at the time he agreed to plead guilty. Since Baker does not assert that the state violated a law or treaty of the United States, he can prevail only if he can show that a constitutional error was committed. Accordingly, we must determine whether the circumstances surrounding Baker's plea of guilty violated the Due Process Clause of the Fourteenth Amendment.

In *Boykin v. Alabama,* 395 U.S. 238, 243–44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court held that a guilty plea could not be accepted unless there was affirmative evidence that it was voluntarily entered by the defendant. The Court also stated that a trial court must use the "utmost solicitude . . . in canvassing the

1. He was declared a parole violator for leaving the Peoria Renaissance Community Center without written permission and going to Chicago.

2. There is some confusion as to how the mandatory two year parole term operated in this case, where Baker was released from incarceration on parole before the expiration of his full prison term. Arguably, he should have been subjected to the supervision of the parole authorities for the remainder of his two year prison term and only then subjected to the mandatory parole term. *See People v. Wills,* 61 Ill.2d 105, 107, 330 N.E.2d 505, 508 (1975). If this had been the case, he would have remained on parole until January 1978.

Regardless of the exact manner in which the mandatory parole term interacted with the ordinary parole term which Baker received instead of a portion of his prison term, however, it is clear that he was imprisoned for longer than two years, and remains on parole today, because of the mandatory parole term which was to follow his prison term.

3. We note that the case is not moot even though Baker is out of prison because he is still in the "custody" of the parole authorities. *See Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Because a criminal defendant waives a number of important constitutional rights when he pleads guilty, *see Boykin,* 395 U.S. at 243, 89 S.Ct. 1709, 1712, courts must diligently labor to ensure that bargaining which accompanies a guilty plea satisfies the constraints of fundamental fairness. *See Santobello v. New York,* 404 U.S. 257, 261–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

■ The state argues, citing this court's decision in *Bachner v. United States,* 517 F.2d 589, 597 (7th Cir.1975), that Baker cannot now attack the validity of his guilty plea unless he can affirmatively demonstrate that he would not have entered the plea if he had known of the mandatory parole term. It further contends that the weight which a criminal defendant would attach to the addition of a two year parole term is so insignificant that it is highly unlikely that Baker would have refused to plead guilty if he had been informed of it.

We are not compelled to accept the state's proposed standard of review. The holding of *Bachner* on the point in issue (517 F.2d at 596–97) should be read in light of the fact that, in the words of Judge Brown in *United States v. Blair,* 470 F.2d 331, 340 n.20 (5th Cir.1972): "[T]he consequences which actually resulted from the plea were not more dire than the defendant had been led to believe they could be." The court in *Bachner* held that *Davis v. United States,* 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), as applied to a collateral review under 28 U.S.C. § 2255 of a federal sentence based on a guilty plea, required, first, an examination of the circumstances surrounding the plea and the sentence to determine whether the error was of sufficient magnitude to amount to a fundamental defect and presented exceptional circumstances requiring habeas relief and, second, even if the error did not appear to reach that level, a determination of whether there was prejudice in fact. 517 F.2d at 592–93.

Regardless of whether the plea in the case before us survives the first of these tests, it cannot survive the second. This case presents different facts from those in *Bachner.* The petitioner in *Bachner* pled guilty, was informed that he could receive up to a fifteen year prison sentence, and was sentenced to ten years' imprisonment. Under the applicable statute, he was required to serve a three year parole term after his prison term expired. The trial judge did not apprise him of this fact, and the petitioner asserted that this omission mandated the vacation of his guilty plea. However, there was nothing to indicate that he had entered the guilty plea pursuant to an agreement as to his sentence. Consequently, he could not complain about any sentence up to fifteen years' imprisonment. Since the district court subsequently resentenced him to seven years in prison, with the three year parole term to follow, he suffered no detriment as a result of the court's failure to advise him of the mandatory parole term, as the *Bachner* court expressly noted. 517 F.2d at 596–97. Accordingly, it correctly refused to overturn the guilty plea.

In contrast, Baker did suffer a detriment. He agreed to plead guilty in exchange for the promise of a specific sentence by the prosecutor, which was then ratified by the trial judge. Yet he was given a more onerous sentence than he had been promised. Since he was not given the benefit of his bargain, this case is distinguishable from *Bachner.*

The correct test to be used in determining whether the circumstances surrounding Baker's negotiated guilty plea violated the Due Process Clause is that the plea must withstand collateral attack unless the sentence actually imposed upon Baker significantly differed from the sentence which the prosecutor and the trial court promised him. We can grant Baker a writ of habeas corpus only if the two year mandatory parole term constituted a substantial addition to the one to two year prison term that he was told he would receive.

■ We do not find the imposition of a two year parole term to be an insignificant punishment. The conditions of parole place a number of onerous burdens on the liberty of paroled individuals.[4] Moreover, a substantial number of parolees are compelled to return to prison for parole violations.[5] Many of these violations are inevitably technical rather than criminal.[6] This was true in Baker's case, and the consequences were hardly insignificant. Baker served thirty-two months in prison despite the fact that he had been promised a maximum of twenty-four months' imprisonment in exchange for his guilty plea. He is still on parole, and could be further incarcerated for another parole violation.

We therefore hold that Baker's guilty plea was unfairly induced in violation of the Due Process Clause. The difference between the three to four years in custody he did receive and the one to two years in custody he was told he would receive is substantial enough to justify a finding that he was unfairly compelled to accept the detrimental elements of his bargain without realizing its benefits.

Our holding comports with *People v. Wills,* 61 Ill.2d 105, 330 N.E.2d 505 (1975), in which the Illinois Supreme Court held that trial judges must advise defendants of a mandatory parole term accompanying an offense before accepting a plea of guilty to that offense.[7] Those courts that have refused to grant collateral relief to a criminal defendant who pled guilty without being advised of a mandatory parole term have usually faced factual situations, like the one in *Bachner,* where the defendant received the benefit of his bargain despite not being fully informed. *See, e.g., McRae v. United States,* 540 F.2d 943 (8th Cir.1976); *Aviles v. United States,* 405 F.Supp. 1374 (S.D.N.Y.1975), *aff'd,* 538 F.2d 307 (2d Cir.1976).

■ Under the circumstances of this case it would be unjust to simply vacate the guilty plea, which theoretically would allow the state to reindict Baker. Since he has already performed his side of the bargain, fundamental fairness demands that the state be compelled to adhere to the agreement as well. *See Santobello,* 404 U.S. at 262, 92 S.Ct. 495. Accordingly, Baker should be released from custody.

The judgment of the district court is reversed.

---

4. For example, in Illinois parole may be revoked if the parolee is away from his or her assigned place of residence after 11 p.m. on weekdays or 1 a.m. on Friday or Saturday, operates a motor vehicle without permission of the parole officer, gets married without permission, travels without permission beyond the boundaries of the county in which parole was granted, or associates with or writes to any person with a criminal record. *See State of Illinois Department of Corrections, Rules of Conduct Governing Adult Parolees* (1973).

5. *See President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections* 62 (1967) (best estimate is that thirty-five to forty-five percent of all parol-

ees are returned to prison for parole violations).

6. *See id.* (large majority of parolees returned are reincarcerated for violation of parole regulations; only about one-third commit new felonies); Note, *Parole: A Critique of Its Legal Foundations and Conditions,* 38 N.Y.U.L.Rev. 702, 721 (1963) (thirty to sixty percent are returned for noncriminal violations).

7. The decision was based on an Illinois court rule that was not in effect at the time Baker was convicted. Moreover, the court held that the decision was not to be applied retroactively. 61 Ill.2d at 109–11, 330 N.E.2d at 508–09.