UNITED STATES of America ex rel.· Gregory GAUTHREAUX, a/k/a Jerome Bradford, Petitioner,

v.

STATE OF ILLINOIS PARDON AND PAROLE BOARD, Respondent.

UNITED STATES of America ex rel. Roosevelt JACKSON, Petitioner,

v.

STATE OF ILLINOIS, Respondent.

UNITED STATES of America ex rel. John BAMBOROUGH, Petitioner,

v.

Charles ROWE, Deputy, Department of Corrections, State of Illinois, et al., Respondents.

Nos. 77 C 3146, 77 C 3672 and 77 C 3126.

United States District Court, N. D. Illinois, E. D.

Jan. 31, 1978.

Gregory Gauthreaux, pro se.

Daniel A. Cummings, Asst. State App. Defender, Chicago, Ill., for petitioner in 77C3126.

John Bamborough, pro se.

Melbourn A. Noel, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

In the wake of *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180 (7th Cir., 1977), three state prisoners have sought writs of habeas corpus from this Court under 28 U.S.C. § 2254 asserting that their guilty pleas in state criminal proceedings were defective. In each of the cases the respondent has moved to dismiss on the grounds that the petitioners have not exhausted their state remedies.

In *Baker* the Court of Appeals for the Seventh Circuit held that a constitutional defect was created in a negotiated agreement for a guilty plea when a state prosecutor and trial judge, who were parties to the agreement, failed to inform the defendant that a mandatory parole term automatically attached to his sentence. After serving his sentence and being released on parole, the defendant was charged with violating parole and was incarcerated for a further period of time. The Court held that this set of circumstances resulted in a sen-

tence greater than that bargained for by the defendant and rendered the guilty plea involuntary in violation of the Due Process Clause of the Fourteenth Amendment since the full consequences of the guilty plea were not made clear to the defendant. The remedy granted by the Court was release from custody and cancellation of the undisclosed parole period. Each of the prisoners now before us claims that his situation requires similar habeas relief.

■ Two of the Section 2254 petitioners, Bradford and Jackson, have filed these petitions *pro se,* and the third, Bamborough, is represented by the State Appellate Defender. Bamborough's petition properly names as the party defendant, Warden Ernest Morris of the Illinois State Penitentiary at Stateville, where Bamborough is currently in custody. The other *pro se* petitions do not specifically name the warden of the state institution where the prisoners are confined, but instead charge the Illinois Pardon and Parole Board (Bradford) and the State of Illinois (Jackson). However, under the rules of liberal construction, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1967), we decline to dismiss either of these petitions for failure to name a proper party respondent. We have no doubt that Bradford and Jackson seek release from custody and, therefore we will construe their naming of the State of Illinois and the Pardon and Parole Board to include the specific individual wardens controlling their custody. In view of our disposition of these two cases, no valid purpose would be served by requiring petitioners to amend their petitions.

We also recognize, as the respondent has argued in each of its briefs, that none of the petitioners has exhausted his state judicial remedies which include direct appeal, *coram nobis,* state habeas corpus or post-conviction petitions. However, because we believe that none of these theoretical avenues to relief are actually or practically available to the petitioners, there is no need to require exhaustion of these statutory possibilities, since the current state of Illinois law would not grant any relief to the petitioners, *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[1]

Therefore, we must now examine the facts of each case to determine whether any of the petitioners are entitled to relief, and if so, what form that relief should take. In each instance certified copies of the transcript of the court proceedings have been filed; the addition of these transcripts to the record enables consideration of the motions to dismiss as motions for summary judgment.

*Jerome Bradford a/k/a Gregory Gauthreaux 77 C 3146*

■ Mr. Bradford, pursuant to a negotiated plea agreement entered a plea of guilty to a charge of robbery[2] in the Circuit Court of Cook County, Criminal Division on April 18, 1974. Pursuant to the plea agreement he was sentenced to a term of imprisonment of four years to four years and one day. He was not advised of the mandatory three year parole provision applicable to Class 2 felonies. Chap. 38 IRS § 1005–8–

1. In reaching this result we have given careful attention to the thoughtful analysis of this question by Judge Prentice H. Marshall of the Northern District of Illinois in his opinion issued in *U. S. ex rel. Williams v. Morris, et al.,* 447 F.Supp. 95 (N.D.Ill.1978). We agree with his conclusion that challenges to guilty pleas made prior to May 19, 1975 without knowledge of the mandatory parole term would be futile in view of the state court decisions striking down such claims based on the omission of a parole admonition. Though the Illinois Supreme Court has held that Illinois Supreme Court Rule 402 requires trial judges to inform criminal defendants of mandatory parole terms attached to their sentences, that requirement has only

been applied prospectively in direct appeals. *People v. Wills,* 61 Ill.2d 105, 330 N.E.2d 505 (1975). Furthermore, collateral review in a state habeas corpus proceeding (Chap. 65 IRS § 22) and petitions under the Illinois Post-Conviction Hearing Act, Chap. 38 IRS §§ 122–1 et seq. has also proved unfruitful. Finally, the two-year statute of limitations Chap. 110 IRS § 72(3) precludes relief through the writ of *coram nobis.*

2. He was indicted for armed robbery. As a further part of the plea agreement this charge was reduced to robbery. See Chap. 38 IRS §§ 18–1, 18–2.

1(e)(3). Considering credit for time served prior to the plea he was released on the maximum release date of March 16, 1976 on mandatory statutory parole.

On August 21, 1976, petitioner was arrested for armed robbery and on August 22, 1976 a parole violation warrant was issued. On May 31, 1977 he was sentenced to nine to twenty years,[3] and in October of 1977 he was transferred from the Cook County Jail to Joliet where he is presently serving out this term.

On August 15, 1977, more than a year after his arrest and more than two and one-half months after his second sentence, from which he has filed a direct appeal, he petitioned this Court for habeas relief relying on *U. S. ex rel. Baker v. Finkbeiner*, 551 F.2d 180 (7th Cir., 1977).[4]

During the hearing in open court on April 18, 1974 when the petitioner entered the plea that is challenged as constitutionally defective, proceedings were interrupted to provide time for a conference in chambers between the judge, prosecutor and defense attorneys. When the hearing resumed Mr. Bradford's attorney stated the agreement resulting from that conference for the record.

MR. WARREN CAREY (attorney for Bradford a/k/a Gauthreaux): May the record show the presence of Mr. Gauthreaux in open court. May the record further show that I have had a conference with the Court and with the Assistant State's Attorney and result of that conference I had a conference with my client which I explained to him that although he was offered two to six years in the preliminary court and that he had accepted it, but due to other circumstances the State was unable to fulfill that agreement, now he is under an indictment in the trial court, that I think under the circumstances and under his previous experience that a recommended sentence that on a plea of four years to four and a

day was a better sentence than the two to six. And I have explained that to you, Mr. Gauthreaux, is that correct?

DEFENDANT GAUTHREAUX: That is correct.

MR. WARREN CAREY: You understand that after that conference and fully understanding it you wish me to withdraw your plea of not guilty heretofore entered and enter a plea of not guilty—a plea of guilty to this indictment, is that correct?

DEFENDANT GAUTHREAUX: That is correct.

MR. WARREN CAREY: You do that of your free and own will, no promises being made to you except what I thought the suggested period of time that you would be incarcerated, four to four and a day for your plea?

DEFENDANT GAUTHREAUX: That is correct.

MR. WARREN CAREY: You understand that?

DEFENDANT GAUTHREAUX: I understand.

MR. WARREN CAREY: If the Court please, on behalf of my client at this time I would like to withdraw the plea of not guilty heretofore entered and enter a plea of guilty to the indictment.

The judge advised the defendants of their waiver of the right of a jury trial, and then before accepting the plea stated:

THE COURT: Before accepting your plea of guilty it is my duty to advise you that on your plea of guilty to this indictment which charges you with armed robbery that you may be sent to the penitentiary for a term of years, it may be any number of years but not less than four years.

However, the transcript contains no statement by the judge, the prosecutor, or the defense attorney which specifically stated that the negotiated sentence included a mandatory parole term. After waiving the

---

**3.** The record does not indicate whether he was sentenced on a plea of guilty or after a trial.

**4.** Papers filed by Mr. Bradford indicate that earlier in 1977 he had attempted to initiate state habeas proceedings, but no formal filing or action appears to have been taken.

right to a presentence report Mr. Bradford (a/k/a Gauthreaux) was sentenced to the agreed upon term.

In the light of this report of the plea proceedings, Bradford's case certainly comes within the scope of the ruling in *Baker*. He entered his guilty plea without the full knowledge of its consequences and was thus deprived of his due process rights. He has now completed the maximum time under the sentence he agreed upon, and, therefore, if he had been re-incarcerated for a parole violation based solely upon this original plea, he would be entitled to release from custody. However, that is not the case; Mr. Bradford is now imprisoned on the sentence imposed on May 31, 1977, and there are no allegations that this sentence is impaired by similar omissions or constitutional defects. His present incarceration must thus be assumed to be valid for the purposes of our current determination. He is, however, entitled to have the parole violation charge and all of the effects stemming from it completely expunged from his record; we order that this be done immediately. Therefore, respondent's motion for dismissal of the petition is denied, and Bradford's petition is granted to the extent of the relief that will be provided by expungement from his record of parole violation; in all other respects his petition is denied. Cf: *United States ex rel. Ferris v. Finkbeiner*, 551 F.2d 185 (7th Cir., 1977)

### Roosevelt Jackson 77 C 3672

█ Mr. Jackson was indicted for armed robbery under Indictments No. 72–1247 and 73–2592 for incidents which took place on January 18, 1972 and April 4, 1973. He was initially found incompetent to stand trial and was committed to the Illinois Department of Mental Health. After having been found competent he appeared in court on September 23, 1976 to plead guilty to all charges. Pursuant to a plea agreement he was sentenced to a term of imprisonment of four years to four years and one day on both charges to be served concurrently. He was given credit for the period of time which he spent in custody awaiting trial and while he was in the hands of the Department of Mental Health; on March 16, 1977 he was released on his statutory five year parole term. In response to a call from Jackson's sister, he was arrested in her home in possession of a four-inch hunting knife on April 2, 1977. This resulted in revocation of his statutory parole, and Mr. Jackson was assigned to the Menard Psychiatric Center where he has been a resident since April 28, 1977. His case was reviewed by the Parole and Pardon Board in June, 1977, and the case was continued until June, 1978.

The transcript of this plea, which took place after May 19, 1975, reflects a situation in which the defendant was thoroughly and scrupulously advised of all his constitutional rights to persist in a plea of not guilty, to confront witnesses, and to have a jury trial at all stages of the proceedings. Petitioner's claim, however, involves an allegation that his current detention is unlawful because he was sentenced under a law with no mandatory parole term, and that therefore he could not have violated any parole. Clearly, there was an election between sentencing provisions which was presented to the petitioner; the 1971 sentencing provision required a five year minimum for a first conviction and an eight year minimum for a second conviction,[5] while the 1975 provision provided for only a four year minimum and a mandatory parole term of five years.[6] The petitioner elected sentencing under the 1975 provisions and after inquiring about possible alcohol or drug use as an influence on the voluntariness of the plea, establishing a factual basis for the charges, and reciting into the record the terms of the negotiated agreement between the prosecutor and the defendant and the public defender who represented him, the Court issued this final admonition:

THE COURT: And as I indicated the minimum is four years and the maximum any period in excess of four years and a

---

5. Chap. 38 IRS (1971) § 18–2.

6. Chap. 38 IRS (1975) §§ 18–2, 1005–8–1(a).

five-year period of parole and up to a $10,000.00 fine.

I have told you already that your sentence is going to be a minimum of four years and one day under the authority of the Illinois Department of Corrections, and each sentence is to be served concurrently with each other, or at the same time. There is not going to be a fine assessed in this case. You are going to be given credit for the period of time you have spent in custody while awaiting trial in this cause, and when you are released you will be on parole for a period of five years.

Is that your understanding of the agreement, too?

THE DEFENDANT: Yes, sir.

Based on this complete record, there is no doubt that immediately before his entry of the guilty plea, Mr. Jackson was fully advised of all the ramifications of the agreement attached to his plea. He is, therefore, not now serving a more onerous sentence than that for which he had originally bargained, and is not entitled to release from his current confinement. Quite to the contrary, there is no issue of material fact which can be disputed in this case and the respondent is entitled to summary judgment as a matter of law, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Jackson's petition for a writ of habeas corpus is denied and summary judgment is granted for the respondent.

*John Bamborough 77 C 3126*

■ On March 7, 1975 John Bamborough entered a plea of guilty in the Circuit Court of Lee County, Illinois to possession of 30 grams of a controlled substance, Phenobaritol.[7] He was sentenced by the Court to a term of one to three years, and received credit for the time he had already spent in custody since January 16, 1975. He was given an opportunity for parole on that sentence, but was declared a parole violator on March 28, 1976 for leaving Illinois without permission. His maximum discharge date on that original sentence was July 5, 1977 and the three year mandatory parole period which is attached to that sentence continues until July 5, 1980, with entitlement to release on January 5, 1980. Without doubt, therefore, it is the mandatory parole provisions, of which Bamborough asserts that he had no knowledge, which authorize his current confinement.[8]

In *Baker*, the Court of Appeals set forth the test to be applied:

> The correct test to be used in determining whether the circumstances surrounding Baker's negotiated guilty plea violated the Due Process Clause is that the pleas must withstand collateral attack unless the sentence actually imposed upon Baker significantly differed from the sentence which the prosecutor *and the trial court promised him*. United States ex rel. Baker v. Finkbeiner, 551 F.2d 180, 183 (7th Cir., 1977). (emphasis added)

Thus, it must be determined from the report of proceedings both whether the prosecutor had promised a specific sentence in exchange for a guilty plea *and* whether this promise was ratified by the trial judge. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), relied upon by the petitioner to support his claim that judicial participation in the negotiating process is not a requirement for enforcement of a plea bargain as to a specific sentence is inapposite. In *Santobello* the state failed to keep a commitment concerning the sentence *recommendation* only, and the relief granted was remand for the purposes of determining whether the defendant should be permitted to *withdraw his guilty plea* or whether specific performance of the agreement should be provided in a resentencing before another judge. The respondent, on the other hand, while conceding that ratification by the trial judge is a key element in the *Baker* test, argues that the formal court room questioning by the judge prior to the time that the plea of

---

7. Chap. 56½ IRS (1975) § 1402(b).

8. Warden Morris has informed the Court, at its own request, that no detainers are on file against Mr. Bamborough at this time.

. guilty was made and accepted gives no indication that the Court promised to abide by any agreement between the prosecutor and the petitioner, or otherwise indicated that it would ratify any agreement or recommendation. The respondent asserts that no ratification is apparent from the transcript and in corroboration of this claim cites the following comment by the trial judge:

THE COURT: . . . do you understand if there have been any promises or threats exerted upon you or any undue influence it wouldn't be binding on the Court?

DEFENDANT: Yes.

THE COURT: Has there been any undue influence against you?

DEFENDANT: No.

However, we believe that this language in itself is not sufficient to demonstrate that there was no ratification by the trial judge of a specific sentence in exchange for defendant's guilty plea.

Nevertheless "plea bargaining" is commonly practiced covertly. After the guilty plea is negotiated by the prosecutor and defense counsel and agreed to by the defendant, defendant follows the rubric of telling the court no promise has induced the plea, and while this game is played the prosecutor and defense counsel mutely corroborate the defendant's false statement. Often a court knows of the negotiations and yet plays its part in the rubric by asking the question about any promise, knowing that the answer will be false. See *Harrell v. United States*, 371 F.2d 160, 163 (7th Cir. 1967) (dissenting opinion by Judge Cummings). The idea of correction of the defendant is frequently lost sight of. There is no reason for the game and the entire system of criminal law administration would be better off if everyone opened his eyes in a forthright recognition that the "plea bargaining" process is needed in the practicality of administering the criminal law. *United States v. Jackson*, 390 F.2d 130, 138 (7th Cir., 1968) (J. Kiley, dissenting).

Furthermore, we note that the next exchange between the judge and the defendant was the following:

THE COURT: Have there been any promises or threats or undue persuasion against you to enter a plea of guilty:

DEFENDANT: Yes.

If there was a negotiated plea agreement which was ratified, the clear omission of mention of the mandatory parole term in the reported plea proceedings would bring Mr. Bamborough's petition within the framework of the *Baker* ruling, and release from his present custody would follow. If, however, there was no ratification of a specific sentence by the judge, the admonitions which he did issue concerning the maximum penalties would bring this case within the holding of *Bachner v. United States*, 517 F.2d 589 (7th Cir., 1975) where the defendant's expectations concerning a sentence were not defined by a plea agreement. For the trial judge did state:

THE COURT: You must also understand the possible penalties, this is what we call a Class 3 Felony so you could be sentenced to not less than one year nor more than ten years, so you could be sentenced any number of years from one to ten or you could be fined in a sum of money not to exceed $10,000.00. so you could be fined in any number of dollars, from one to ten thousand, do you understand that?

On the basis of the record before us we are unable to ascertain definitively which of these possible interpretations is correct. There are many indications that a plea agreement did exist and was ratified. First, the transcript itself is labeled "Report of proceedings at the hearing on *Negotiated Plea* of John W. Bamborough." In addition, at another point the judge stated:

THE COURT: The Court will accept your plea of guilty, it is my understanding that you wish to make a recommendation to the Court.

.  .  .  .  .

MR. WARD: (The State's Attorney): The State has a recommendation and we would like to lay before the Court the prior convictions of the defendant. De-

fendant was convicted in 1973 of theft of lost or misplaced property; he was convicted again in 1973 of petty theft; he was convicted in 1973 of reckless driving; convicted in 1974 of reckless driving; convicted in 1974 of criminal damage to property. There are three charges pending against the defendant in Ogle County, fleeing or attempting to elude, driving while license revoked and disorderly conduct. The State would recommend that the defendant be sentenced to one to three years at the penitentiary and the State is under express promise from the Ogle County State's Attorney that if he does receive this sentence the pending charges in Ogle County will be dismissed.

To resolve this issue of fact, a hearing shall be scheduled. This hearing shall be limited solely to the issue of participation of the judge in the plea agreement, including any communications by the judge as to what his sentence would be which were reported to the defendant.