UNITED STATES of America ex rel. Dudley James RUSSO, Petitioner-Appellant,

v.

ATTORNEY GENERAL OF ILLINOIS, Respondent-Appellee.

Nos. 83–1520, 84–1721.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1985.

Decided Jan. 7, 1986.

Emanuel M. Krakauer, Chicago, Ill., for petitioner-appellant.

Kenneth A. Fedinets, Office of Illinois Atty. Gen., Chicago, Ill., for respondent-appellee.

Before CUMMINGS, Chief Judge, WOOD, Circuit Judge, and WYATT, Senior District Judge.*

* The Honorable Inzer B. Wyatt, Senior District Judge from the Southern District of New York, is sitting by designation.

PER CURIAM.

Petitioner-appellant Dudley James Russo, who initially was successful in his bid for habeas corpus relief, 28 U.S.C. § 2254, appeals from a final order of the district court denying, upon reconsideration, Russo's petition for writ of habeas corpus.

## I.

Russo's claims arise out of his pleas of guilty to state charges of armed robbery and murder, tendered one day after trial began. The state court, in sentencing Russo to concurrent terms of twenty to forty years incarceration, failed to inform him of the mandatory parole term which, by operation of law, attached to his sentence.

Notice of appeal from the circuit court judgment of conviction was filed on June 28, 1974, and a state appellate defender was appointed to represent Russo on December 12, 1974. One year later, Russo received a letter from the state appellate defender who introduced herself as Russo's attorney and attendantly informed him that she was filing with the court a motion for leave to withdraw as appellate counsel and an *Anders* brief. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel further informed Russo that he had thirty days within which to communicate to the court any errors he thought could have been raised. Counsel did not consult with Russo either in person or by mail prior to filing the *Anders* brief. In the *Anders* brief, counsel stated that the only argument that could possibly be raised on appeal was the trial court's failure to admonish Russo, pursuant to Ill.Sup.Ct.R. 402, Ill.Ann.Stat. ch. 110A, ¶ 402 (Smith-Hurd 1985), of certain rights prior to the acceptance of his guilty plea. Russo claims that despite numerous requests he never received the transcript of the proceedings necessary to proceed with the appeal *pro se.*

In its Rule 23 order, the Illinois appellate court permitted counsel to withdraw and

affirmed the convictions in an unpublished order. *People v. Frustine,* 36 Ill.App.3d 1079, 350 N.E.2d 375 (1st Dist.1976). Russo's first petition for a writ of habeas corpus was dismissed for failure to exhaust his state post-conviction remedies. He then sought post-conviction relief, Ill.Ann. Stat. ch. 38, ¶ 122–1, raising two issues: (1) the trial court's acceptance of his guilty plea without holding a hearing on his competency to stand trial violated his due process rights; and (2) trial counsel's failure to request such a hearing constituted ineffective assistance of counsel. Russo was unsuccessful at the trial court level and on appeal. *People v. Russo,* 61 Ill.App.3d 1110, 21 Ill.Dec. 610, 381 N.E.2d 1057 (1st Dist.1978) (unpublished order).

Russo's second attempt to gain habeas corpus relief was successful—initially. The district court was persuaded that Russo was denied the effective assistance of appellate counsel:

> In Russo's appeal, the State Appellate Defender did not afford the petitioner the level of conscientious investigation of facts, marshalling of the law and presentation of arguments which *Anders* requires before a motion to withdraw. The appellate defender failed to ever consult, confer or inquire of petitioner concerning any of the events and issues surrounding trial prior to the motion to withdraw. Any genuine opportunity that the petitioner may have had to show that his appeal had hidden merit was denied him because of the absence of essential attorney-client contact.

Citing *Sutton v. Lash,* 576 F.2d 738 (7th Cir.1978), the district court further found that Russo had been denied his right to appeal through the state's failure to provide him "transcripts and a trial record." [1] The court ordered Russo's release but stayed the order to permit the state to provide a meaningful appeal.

The district court, pursuant to respondent's motion, subsequently reconsidered its decision. With respect to the *Anders* claim, the court concluded that actual consultation with the client prior to the filing of an *Anders* brief is desirable but not constitutionally compelled. Alternatively, if such consultation is constitutionally required, counsel's failure to consult with Russo was harmless error. Noting that a defendant who pleads guilty waives all constitutional challenges based on events that occurred prior to the entry of the plea, *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), the district court found that Russo's only challenge on direct appeal could have been to the trial court's failure to inform him of the mandatory parole term. According to the district court, when Russo appealed in 1974, this claim "could not have been made" because it was not until 1975 that the Illinois Supreme Court held that Illinois law requires that a defendant be informed of a mandatory parole term.

The district court further reconsidered its holding that Russo had been denied his right to appeal. Since only the voluntariness of the guilty plea could be challenged on direct appeal, only the transcript of the change of plea proceeding was necessary to pursue the appeal. The court found that this transcript had been forwarded to Russo.

Finding it necessary to address Russo's third claim, the district court held Russo was not entitled to relief under *United States ex rel. Baker v. Finkbeiner,* 551 F.2d 180 (7th Cir.1977), because there was no evidence that the trial judge agreed to impose a specific sentence.

---

1. The third claim raised by Russo, that he was deprived of due process by the state court's failure to inform him of the mandatory parole term before accepting his guilty plea, was not addressed. As far as we can tell, none of these three claims was raised in Russo's petition for post-conviction relief. The state, however, apparently did not raise the exhaustion issue with the district court and does not do so here. We therefore decline to order, *sua sponte,* dismissal for failure to exhaust. *See Heirens v. Mizell,* 729 F.2d 449, 457 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 147, 83 L.Ed.2d 85 (1984); *but see Walberg v. Israel,* 766 F.2d 1071, 1072 (7th Cir. 1985) (U.S. Appeal Pending); *Mattes v. Gagnon,* 700 F.2d 1096, 1098 n. 1 (7th Cir.1983).

Russo's subsequent motion for relief from judgment was denied. A certificate of probable cause to appeal was issued. Russo tenders the same arguments on appeal and additionally claims that the district court erred in considering for the first time on a motion for reconsideration respondent's contention that Russo had indeed received the transcript of the change of plea proceeding.

## II.

In *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), the Court, noting that appellate counsel must play the role of an active advocate rather than that of *amicus curiae*, set forth the appropriate procedure to be followed when counsel seeks to withdraw.

[I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.

▮▮▮ As we read *Anders*, counsel renders constitutionally adequate assistance when he conscientiously examines the case; files a brief referring to anything in the record that might arguably support the appeal; forwards a copy of the brief to the defendant; and informs the defendant of his right to present to the court other issues which he feels have merit. We agree with the Court of Appeals for the Fourth Circuit that although actual consultation with the defendant prior to the filing of the request to withdraw and accompanying *Anders* brief is highly desirable,[2] it is not constitutionally required. *Smith v. Cox*, 435 F.2d 453, 458–59 (4th Cir.1970), *vacated on other grounds sub nom. Slayton, Penitentiary Supt. v. Smith*, 404 U.S. 53, 92 S.Ct. 174, 30 L.Ed.2d 209 (1971)[3] Russo does not claim that he did not receive a copy of the *Anders* brief nor does he contend that he was not given adequate time to inform the court of any arguments he wished to raise. Rather, he contends that he was effectively denied his right to appeal because he never received the records and transcripts necessary to do so. We turn now to an examination of this due process-equal protection claim. *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

## III.

▮▮▮ Russo does not dispute the state's contention that, because one who pleads guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), the only relevant transcript was that of the change of plea proceeding. Russo claims only that he did not receive this transcript. In its second order, the district court found otherwise.[4] In a subsequent Rule 60(b) motion,

---

2. Illinois law requires actual consultation with the defendant prior to withdrawal. *See* Ill.Sup. Ct.R. 604(d), Ill.Ann.Stat. ch. 110A, ¶ 604(d) (Smith-Hurd 1985).

3. There was no indication in *Smith* that counsel had conferred with the defendant either in person or through correspondence.

4. Russo contends that, because the state originally failed to respond to his claim that he never received the relevant transcript, it could not, by way of its motion pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil

Procedure, seek reconsideration of the district court's order sustaining that claim. The cases cited by Russo do not support this proposition; they state merely that Rule 52(b) and Rule 59 motions may not be used to relitigate issues or to present the party's case under a new legal theory; rather these motions are intended to correct manifest errors of law or fact or to present newly-discovered evidence. *See, e.g., Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D.Ill.1976). The state did not seek to relitigate an issue or to present a new legal theory to the district court. Rather, it argued

Russo contended that the district court's finding was erroneous. Attached to the motion were the respective certifications appearing at the end of Russo's copy of the common-law record and at the end of the record that was filed with the appellate court. The former certifies that the foregoing is a "perfect and complete copy of the common law record." The latter certifies that the foregoing is a "perfect and complete copy of the common law record" including the original of the report of proceedings filed pursuant to Ill.Sup.Ct.R. 608(b), Ill.Ann.Stat. ch. 110A, ¶ 608 (Smith-Hurd 1985). The district court noted that although Exhibit AA, the certification appearing at the end of the record received by Russo, indicated that the "common law record" received by Russo did not include the transcript of the change of plea proceeding, the state, relying on Ill.Sup.Ct.R. 402(e), Ill.Ann.Stat. ch. 110A, ¶ 402 (Smith-Hurd 1985), continued to maintain that Russo received the transcript as part of the common-law record. The district court found this factual dispute immaterial to resolution of the constitutional issue presented. Because the Illinois appellate court had before it, and obviously relied upon, the relevant transcript in reviewing Russo's guilty plea, Russo was afforded the full and effective review of his conviction required by *Griffin*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 and *Sutton*, 576 F.2d 738. Alternatively, the court found that any error in failing to afford Russo a copy of the transcript was harmless beyond a reasonable doubt.

Under Illinois law, in order to obtain full direct appellate review of alleged trial errors, the defendant must furnish the appellate court with a report of the proceedings at trial. In *Griffin*, the Supreme Court struck down, as violative of the right to full and effective appellate review, the state's practice of denying indigent defendants the free transcripts necessary to such review. In *Sutton*, 576 F.2d 738, the other case

relied upon by Russo, two defendants were denied their right to appeal, despite their clearly manifested desire to do so, through the state's refusal to honor their timely request for a trial transcript. The state trial judge, in denying their request for a trial transcript, erroneously advised defendants that trial records were available only upon the request of the Indiana Public Defender after he determined that the appeal had merit. In fact, that practice, later declared unconstitutional by the Supreme Court in *Lane v. Brown*, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963), was applicable only to post-conviction proceedings and not to direct appeals. We made clear that under *Griffin*, defendants "were entitled to secure a transcript or, alternatively, the state was obligated to provide adequate appellate review, due to their undenied indigency." *Sutton*, 576 F.2d at 742. Defendants' subsequent petition to the Indiana Supreme Court to obtain a transcript was treated as a statutory motion for a belated appeal. Without the assistance of a transcript, the Court concluded the proposed appeal lacked merit and affirmed the convictions. This, we further concluded, was not the full and effective appellate review required by *Griffin*.

We, like the district court, are convinced that, despite the state's alleged failure to afford Russo the relevant transcript, Russo was afforded full and effective appellate review of his conviction. Unlike the appellate courts in *Griffin* and *Sutton*, the appellate court in this case had the relevant transcript before it. It is apparent from the court's order disposing of the appeal that the court carefully combed the transcript before concluding that Russo's guilty plea was informed and voluntary.

## IV.

Finally, Russo challenges, as violative of his due process rights, the state court trial judge's failure to inform him of a five-year

that the court had erred in granting Russo relief because Russo's own exhibits revealed that he had received the transcripts; the state asked the court to correct its erroneous factual finding to

the contrary and to alter the judgment accordingly. We find no error on the part of the district court in entertaining the state's motion.

mandatory parole term that would accompany his negotiated sentence. He contends that this court's decision in *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180 (7th Cir.1977), is dispositive. In *Baker*, the plea agreement between Baker and the prosecutor, which provided that Baker would be sentenced to a prison term of one to two years, was ratified by the trial judge. Baker was not informed of a two-year parole term that automatically attached to his sentence. We determined that the plea could not withstand collateral attack if the sentence actually imposed differed significantly from the sentence that Baker had been promised by the prosecutor and the trial court. We found that it did. Baker was therefore "unfairly compelled to accept the detrimental elements of his bargain without realizing its benefits." 551 F.2d at 184. We distinguished our earlier decision in *Bachner v. United States*, 517 F.2d 589 (7th Cir.1975). Bachner too pleaded guilty without being informed of a mandatory parole term, but the plea was not tendered pursuant to any agreement as to his sentence. Because Bachner was informed that he could receive the maximum fifteen-year sentence and because the sentence actually imposed, including the mandatory parole term, was within this maximum penalty, Bachner received the benefit of his bargain despite the trial judge's failure to advise him of the mandatory parole term. No error of constitutional magnitude had been committed.

This court's subsequent decisions have made clear that *Bachner* is controlling if the trial court was neither a party to nor ratified any plea agreement and the sentence actually imposed, including any mandatory parole term, was within the maximum sentence the defendant was warned he could receive. *See, e.g., United States ex rel. Williams v. Morris*, 633 F.2d 71, 76–77 (7th Cir.1980), *vacated as moot sub nom. Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982).

The threshold issue is whether the state trial judge did in fact agree to impose a specific sentence in exchange for Russo's guilty plea. *United States ex rel. Johnson v. DeRobertis*, 718 F.2d 209, 210 (7th Cir. 1983). The district court found no evidence of ratification by the trial judge of a negotiated sentence. The court noted that the trial judge's listing of the range of possible sentences which could be imposed upon Russo was inconsistent with the allegation that the trial judge had agreed to give a specific sentence. Russo contends that this finding is clearly erroneous.

A finding may be found to be clearly erroneous when the reviewing court, viewing the evidence in its entirety, is "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Although this standard is a narrow one and does not permit an appellate court to reverse the finding of the trier of fact merely because it would have reached the opposite conclusion, *Anderson v. City of Bessemer City, North Carolina*, —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), in those cases in which the reviewing court definitely believes a mistake has been made it is required to reverse the decision of the trial court. After reviewing the record in light of Illinois law, we conclude that a mistake has been made here.

The following excerpts from the transcript of the guilty plea hearing and sentencing are relevant to Russo's claim. Initially, the trial judge stated:

> You understand by pleading guilty to these charges, I could sentence you on each one of the charges from one year to life in the penitentiary.... I could sentence you on the murder from fourteen to life; on the armed robberies, four to life; on the attempt murder, four to life, you understand that, gentlemen?

Russo and his codefendant responded affirmatively. The trial judge proceeded to question defendants:

> No promises were made to you or threats made to you to get you to plead guilty, with the exception of the results of your attorney talking to the state's attorney and that was that if you pled guilty, I

would sentence you to twenty to forty years in the Illinois State Penitentiary with all sentences to run concurrent, is that correct, gentlemen?

Russo and his codefendant responded affirmatively. After the factual bases for the pleas were established, the court also heard evidence in mitigation and aggravation.

Respondent argues that this exchange indicates that the court had not ratified the plea agreement and that therefore Russo's reliance on *Baker* is inapposite. Although at first glance the trial judge's comments might be viewed in such a way, in context and in light of relevant Illinois law we believe that the trial judge was in fact a party to Russo's plea agreement.

The district court concluded that the state trial court's disclosure of minimum and maximum penalties "is obviously inconsistent with the allegation that there existed prior tripartite agreement on the length of [Russo's] sentence." We note, however, that the disclosure of minimum and maximum penalties is expressly required by Illinois law before any guilty plea is accepted, irrespective of whether a plea agreement has been ratified by the trial court. In pertinent part Ill.Sup.Ct.R. 402(a), Ill.Ann. Stat. ch. 110A, ¶ 402 (Smith-Hurd 1985), provides:

> In hearings on pleas of guilty, there must be substantial compliance with the following:
>
> (a) *Admonitions to Defendant.* The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
>     \*     \*     \*     \*     \*     \*
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences....

When the Illinois trial court judge advised Russo of the minimum and maximum prison sentences that could be imposed by law,

it seems clear that he was merely carrying out the duty placed upon him by Illinois law. *See Williams,* 633 F.2d at 73–74, 77 (discussion by trial court of maximum and minimum prison sentences as mandated by Illinois law not bar to finding that trial court ratified plea agreement).

We also find that Ill.Sup.Ct.R. 402(b) sheds light on Russo's situation. Rule 402(b) provides:

> (b) *Determining Whether the Plea is Voluntary.* The court shall not accept a plea of guilty without first determining that the plea is voluntary. If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court. The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea.

In connection with Rule 402(b), we also look to Rule 402(d) for further guidance. Rule 402(d) provides in part as follows:

> (d) *Plea Discussions and Agreements.* When there is a plea discussion or plea agreement, the following provisions, in addition to the preceding paragraphs of this rule, shall apply:
>
>     \*     \*     \*     \*     \*     \*
>
> (2) If a tentative plea agreement has been reached by the parties which contemplates entry of a plea of guilty in the expectation that a specified sentence will be imposed or that other charges before the court will be dismissed, the trial judge may permit, upon request of the parties, the disclosure to him of the tentative agreement and the reasons therefor in advance of the tender of the plea. At the same time he may also receive, with the consent of the defendant, evidence in aggravation or mitigation. The judge may then *indicate to the* parties whether he will concur in the proposed disposition; and if he has not yet received

evidence in aggravation or mitigation, he may indicate that his concurrence is conditional on that evidence being consistent with the representations made to him. If he has indicated his concurrence or conditional concurrence, he shall so state in open court at the time the agreement is stated as required by paragraph (b) of this rule....

(3) If the parties have not sought or the trial judge has declined to give his concurrence or conditional concurrence to a plea agreement, he shall inform the defendant in open court at the time the agreement is stated as required by paragraph (b) of this rule that the court is not bound by the plea agreement, and that if the defendant persists in his plea the disposition may be different from that contemplated by the plea agreement.

In Russo's case, the record indicates the trial judge did state in open court the terms of the plea agreement in which he concurred. As noted in the excerpts from the trial transcript, the trial judge, in ascertaining whether the guilty plea was made voluntarily, stated that pursuant to the plea agreement he "would sentence [Russo and his codefendant] to twenty to forty years in the Illinois State Penitentiary...." The fact that the trial judge then sought evidence in aggravation and mitigation is not inconsistent with his ratification of the plea agreement. Rule 402(d)(2) provides for the receipt of such evidence even after the trial judge has initially ratified the plea agreement. Indeed, after hearing evidence in aggravation and mitigation, the state trial court judge reaffirmed his ratification of the plea agreement when he stated: "These men [Russo and his codefendant] should go to the chair, and the only reason why *I agreed* to 20 [t]o 40 is in the hopes that by the time they get out, they are too old to walk in saloons or any place else and kill people...." (emphasis added).

We also note that what the trial judge did *not* say at Russo's guilty plea hearing and sentencing is equally as significant as what he did say. Rule 402(d)(3) requires

the trial judge, when he does not "give his concurrence or conditional concurrence to a plea agreement" to inform the defendant in open court "that the court is not bound by the plea agreement, and that if the defendant persists in his plea the disposition may be different from that contemplated by the plea agreement." We find that nothing of this sort was said by the trial judge to Russo.

■ After reviewing the foregoing excerpts from the record of Russo's guilty plea hearing and sentencing in light of Ill.Sup.Ct.R. 402, we are left with a "definite and firm conviction," *Gypsum*, 333 U.S. at 395, 68 S.Ct. at 541, that the district court erred when it found that the Illinois trial judge had not ratified Russo's plea agreement. We therefore conclude that the district court's finding is clearly erroneous and hold that Russo's due process rights were violated in contravention of *Baker* when the trial court failed to advise him of the mandatory parole term that would accompany his prison sentence.

■ Russo contends that this violation of his due process rights entitles him to an opportunity to plead anew. We disagree. In remedying the wrong that has been committed, fundamental fairness can be achieved by eliminating Russo's mandatory parole term so that his sentence comports with the bargain he made. *See Baker*, 551 F.2d at 184; *Williams*, 633 F.2d at 77 (affirming district court's order expunging mandatory parole terms found to be violative of defendants' due process rights). Accordingly, we reverse the district court's order denying Russo habeas corpus relief and remand with instructions that the district court direct the respondent, at the time of Russo's release from custody pursuant to the sentence of June 14, 1974, to effect such release without any mandatory parole term and to expunge any such parole term from Russo's record.

Reversed and Remanded With Instructions.