THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES ROBINSON, Defendant-Appellant.

(No. 73-68; )

Third District—June 13, 1974.

STOUDER, J., dissenting.

John Barton, of Barton and Barton, of Marseilles, for appellant.

Robert E. Richardson, State's Attorney, of Ottawa, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order entered by the Circuit Court of La Salle County in a post-conviction proceeding initiated by defendant James Robinson. From the record it appears that, following plea negotiations, James Robinson entered a plea of guilty to the crime of forcible rape.

The record discloses that the victim was an 86-year-old resident of a retirement home and that defendant had infected the victim with gonorrhea. The record discloses also that defendant was fully admonished in accordance with Supreme Court Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, § 402). The defendant was thereafter sentenced to a term of not less than 10 nor more than 40 years, based upon plea negotiations and the recommendation of the State's Attorney. The court did not participate in the plea negotiations but accepted the recommendation of the prosecutor, and the sentence was consistent with such plea negotiations.

It appears that a few days following the proceeding in the trial court, the prosecutor prepared and signed, and the trial judge also joined in signing, an official statement or pen letter which included recitations of facts and circumstances relating to the defendant and the crime for which he was convicted. A recommendation was also included in the letter which specifically recited, "It is recommended that this defendant serve the maximum time possible under the 10-40 year sentence imposed upon him." It appears also from the record that defendant James Robinson found out about the recommendation as a result of the fact that a friend of his, a fellow prisoner who was working in the record office at the diagnostic depot, saw the recommendation and showed it to defendant James Robinson.

Defendant Robinson thereafter filed a post-conviction petition alleging that the recommendation contained in the so-called pen letter violated the plea bargain, because, it is asserted, it would have the effect of substantially increasing the minimum time which defendant Robinson would be required to serve before he would be considered for parole. It is recited in the petition that defendant Robinson was not advised, prior to entering the plea of guilty, that such pen letter or recommendation would be made, and defendant also asserts in such petition that if he had known such recommendation would be made he would not have agreed to plead guilty. At the hearing conducted in connection with the sentence, and following plea negotiations, defendant acknowledged that he was pleading guilty because he was in fact guilty.

At the hearing on the post-conviction proceeding, the executive secretary of the Pardon and Parole Board testified that in his opinion, the recommendation by the judge and the State's Attorney that the prisoner serve the absolute maximum on a sentence of from 10 to 40 years would be a factor which the board would consider in determining eligibility of defendant for parole. A former acting chairman of the Pardon and Parole Board, now acting as a special assistant to the State Appellate Defender, also testified that the recommendation would be a critical factor, but only one of many factors in determining parole eligibility. The testimony of the witnesses indicated that they did not know who the members of the Parole Board would be at the time defendant would first come up for parole, and, also, did not know whether the Parole Board at that time would be influenced in any way by the recommendation of the State's Attorney or the trial judge, and that they could not predict whether or not defendant would or would not receive parole at the earliest possible opportunity.

Defendant asks that the guilty plea be vacated on the premise that he was induced by false promises by the prosecutor and the trial judge and was not properly advised of the consequences of his plea before it was accepted, simply by reason of the fact that the pen letter was written to the Parole Board a few days after he was sentenced. There is nothing in the record to indicate that there was any thought or discussion of the question of a pen letter or any recommendation in any respect whatsoever as to parole for defendant, when defendant pleaded guilty in the trial court.

The issue before this court has been specifically considered by the Supreme Court of this State in the case of *People v. Hawkins*, 54 Ill.2d 247. In the *Hawkins* case a statement had been prepared by the prosecutor, in which the trial court concurred, and in which a recommendation was made to the Parole Board that defendant would be an unfit subject for early parole because of the probability of his initiating trouble of an interracial nature. In that case, also, defendant contended that his guilty plea must be set aside because he was not advised that such recommendation would be made, and that the trial court and prosecutor violated the plea agreement by such course of action. In the *Hawkins* case the court specifically found that the filing of the State's Attorney's statement, concurred in by the court in that case, a short time afer sentencing, was not a fundamentally unfair procedure and was consistent with the obligations of the prosecutor and the court. It was pointed out in *Hawkins* that the State's Attorney and the sentencing judge were required to be notified prior to defendant's parole hearing in order to

afford them an opportunity to express their views regarding the propriety of parole for defendant. It was also noted that, from a practical standpoint, the passage of time between sentencing and a defendant's initial parole hearing might result in a diminution of recall of pertinent observations which might aid the Parole Board in determining if parole should be granted. The court therefore found that the making of the recommendation shortly after defendant's sentencing is not improper.

■■ As is true in this case, defendant in *Hawkins* relied on *Santobello v. New York*, 404 U.S. 257, 30 L.Ed.2d 427, 92 S.Ct. 495. As indicated in the *Hawkins* opinion in the supreme court, however, *Santobello* is not applicable to present case. In the *Santobello* case the prosecution clearly violated its prior agreement not to recommend a sentence. Also, in *Smith v. United States*, 469 F.2d 705, cited by defendant, the court found that where narcotics cases are involved, defendant must be advised that parole eligibility is precluded if there is a guilty plea. That case, clearly, is not applicable to the present issue. The observations of the Illinois Supreme Court in *People v. Hawkins*, 54 Ill.2d 247, 252, however, are particularly pertinent to the issue now before this court. The supreme court stated there:

> "Parole has been classified as a matter of grace and clemency (*People ex rel. Kubala v. Kinney* (1962), 25 Ill.2d 491, 493) to which one incarcerated for a criminal offense has no right even though he may be eligible, because he may not demand his discharge before the maximum term of his sentence has expired. (*People ex rel. Jones v. Brantley* (1970), 45 Ill.2d 335, 338.) In the present case defendant would become statutorily eligible for parole upon the completion of the minimum sentence imposed, and defendant's contention that said recommendation affected his possibility of parole is mere conjecture."

Certainly no admonition was required as to any possible pen letter or statement which might be made by the prosecutor and trial judge in connection with parole. As indicated in *People v. Hawkins*, 3 Ill.App.3d 359, at 361:

> "In *People v. Chaney* (Ill.App.2d) it was held after careful consideration of the relevant authorities, that the trial court need not admonish the defendant that as a consequence of a plea of guilty the State's Attorney or some other person might oppose his parole. We reiterate this rule."

The court in *People v. Chaney*, 2 Ill.App.3d 675, pointed out that to require that a trial court embark on problems relating to parole and actions of the Parole Board which might result from a recommendation

of the prosecuting attorney or the court would involve the court in a "quagmire of uncertainty and irrelevant detail, almost incomprehensible in scope."

■■ It is clear from the precedents referred to, that the making of the recommendation following sentencing, is only what it purports to be— simply a recommendation. The Parole Board is entitled to a true reflection of the viewpoint of the prosecutor and the court as to parole for a prospective parolee. There was no bargain express or implied that the State's Attorney or the court would not disclose what they felt to be the proper treatment of defendant in any communication to the Parole Board. It is also clear that the authority to parole, vested in the Pardon and Parole Board, has been classified as a matter of grace and clemency to which defendant has no right even though he may be eligible, and that his conduct in prison as well as other factors are considered by the Pardon and Parole Board in determining when and if parole should be granted.

On a review of the precedents and for the reasons stated, we find no basis for reversal of the order of the trial court denying the relief of withdrawal of the guilty plea requested in the post-conviction petition. The order of the Circuit Court of LaSalle County will, therefore, be affirmed.

Affirmed.

SCOTT, P. J., concurs.

Mr. JUSTICE STOUDER dissenting:

I do not agree with the majority of the court. The evidence presented by the defendant in support of his petition for post-conviction relief is sufficient to require that such relief be granted and consequently I believe the trial court's conclusion to the contrary is erroneous.

*People v. Hawkins,* 54 Ill.2d 247, 296 N.E.2d 725, the case principally relied upon by the majority, involves, as does this case, a post-sentencing statement accompanying the *mittimus* and is therefore a pertinent authority. However, because of significant differences between the procedure and facts in the *Hawkins* case and those in the instant case, I believe the reasoning and result in *Hawkins* are not appropriately extended to approve the trial court's action in this case.

The differences I refer to are twofold. The first is that in *Hawkins* an appeal was taken from the original judgment and sentence, it appearing that the statement somehow or other became a part of the record on appeal. This procedure caused the appellate court in its review of the conviction to express grave doubts and concern that the issue presented

by the statement was even reviewable. (See *People v. Hawkins,* 3 Ill.App.3d 359, 277 N.E.2d 893.) Because of the procedure involved, the supreme court upon further review, although dealing principally with the issue of the statement, was compelled to do so from a peripheral point of view and the court concluded that the absence of any evidence concerning the purpose and effect of the statement rendered the defendant's position speculative and without merit. This brings me to the second difference between the *Hawkins* case and this case which is a difference in procedure, *i.e.,* the present case involves a post-conviction petition and the presentation of evidence relative to such petition tending to show the effect of such a statement on defendant's future incarceration. In this respect I believe the evidence fairly demonstates that at least by force of accepted policy and custom, the statement of the State's Attorney concurred in by the trial judge recommending "* * * this defendant serve the maximum time possible under the 10-40 year sentence imposed upon him" meant that any meaningful consideration of defendant's application for parole would be delayed or postponed. In other words, defendant's potential release on parole would be considered as if a greater minimum sentence had been imposed.

The State in the court below and in this court sought to minimize the purpose and effect of the statement by suggesting that the statement is merely a recommendation and, consequently, whether the parole board attaches any significance to the recommendation is the parole board's business and not that of the prosecution. Essentially this is the position which the court adopted in the *Hawkins* case where because of the absence of evidence it could not be determined how or to what extent such a statement would affect the defendant's incarceration. Where, as in this case, the testimony of witnesses indicates the fact that such a recommendation will in effect extend the defendant's minimum period of incarceration, the purpose, intent and effect of the statement are confirmed.

It goes with out saying that a plea of guilty is the highest order of proof in a criminal case since it represents a confession in open court that the accused is guilty of the offense charged. Such expressions of guilt are not to be regarded lightly and courts should give convictions based on guilty pleas their full legal effect where the record indicates such pleas are understandably and voluntarily made.

Whether pleas are voluntary has raised many questions in recent years and represents an area of our criminal justice system which is in a process of evolution. So far as the instant case is concerned I do not believe that any problem of adequate advice or admonishment is involved. Rather, I believe the issue to be resolved in this case depends on that aspect of voluntariness of a guilty plea related to inducement. It has only been a

few years since courts officially recognized that plea bargaining existed, that it was a desirable feature of our justice system, and that disclosure of plea bargaining rather than concealment thereof better served the fairness of our procedures. It requires only a short memory to recall those days in which a defendant after arriving at a plea bargain with the prosecution was required to deny in open court that any bargain existed or that his plea was induced by any promises.

Supreme Court Rule 402(d) (Ill. Rev. Stat. 1971, ch. 110A, par. 402(d)) initially recognizes not only the existence and benefit of plea bargaining but does so with the requirement that the provision of the bargain be revealed in open court so that the trial court may accept or reject the conditions thereof. Full disclosure of the terms of the plea bargain not only obviate possible misunderstanding or misrepresentation but also enable the court to proceed in accord with the terms of the bargain. If the trial judge believes the terms of the bargain are inappropriate the defendant is permitted by the rule to withdraw his proposed guilty plea, to plead not guilty and thereafter to avail himself of the further processes of the law.

Having now fully approved the concept of plea bargaining it seems to me that the elements of full disclosure and good faith compliance with the terms of the bargain become essential ingredients in determining whether the plea is voluntary. Where, as in this case, a particular minimum sentence is recommended by the State's Attorney, is agreed upon by the parties, and, where a greater minimum sentence could have been imposed in accord with the statute, the defendant may justily assume that his parole eligibility and hence his incarceration will be governed by the applicable statutory provisions concerning eligibilty for parole. In the instant case the State initially proposed that in return for a guilty plea a sentence of from 20 to 60 years would be recommended. The defendant unequivocally refused to accept such proposed recommendation. The effect of the post-sentencing statement is to modify or amend without the knowledge of the defendant the legal effect of the minimum sentence imposed, thereby constituting a failure of the court to accept and impose sentence in accord with the provisions of the plea bargain. If on the one hand the court may impose a minimum sentence less than could have otherwise been meaningfully imposed and at the same time by action undisclosed to defendant materially modify the minimum sentence, it seems to me that such action is contrary to our concept of fairness. The relationship between the court's recommendation and the action of the Parole and Pardon Board is neither defined by statute nor judicial precedent, thus permitting covert informal arrangements to exist without formal sanction. Under such circumstances a defendant may be

induced to plead guilty by a proposed recommendation which the prosecution is willing or anxious to make, well-knowing that without the knowledge of the defendant the sentence can be modified to the defendant's disadvantage. If the court in accepting such a recommendation believes that the terms of the arrangement are satisfactory and acceptable it goes without saying that if the court then takes action which is in effect contrary to its previous holding concerning the appropriateness of a minimum sentence we have a situation likely to promote misunderstanding and confusion.

Granted that in *People v. Hawkins*, 54 Ill.2d 247, 296 N.E.2d 725 the court held that *Santobello v. New York*, 404 U.S. 257, 30 L.Ed.2d 427, 92 S.Ct. 495, was inapposite because the State's Attorney in the *Hawkins* case made no recommendation concerning the post-sentence statement as a part of the plea bargain. But the court was able to do so because in the absence of any evidence of the effect of the recommendation it could not be said that the defendant's sentence was adversely affected by the prosecution's action. Whether or not the prosecution included as a specific term of the plea bargain any reference to a post-sentencing statement would seem to be immaterial when the effect of such action is, as in the present case, established by evidence. The conclusion that the defendant has been misled to his disadvantage seems to me inescapable. It also should be noted that in a plea bargaining situation the prosecution and the defense are not adversaries when it comes to securing approval and performance of a plea bargain. The parties have a unity of interest, for whatever their individual reasons might be, in having a plea bargain accepted, approved and performed by the court. This places an added burden on the prosecution to see that the provisions of the bargain are carried out and, conversely, creates a duty that the prosecution take no action contrary to the terms of the agreement or which might defeat its terms.

Doubtless, a post-sentencing statement is both a necessary and desirable procedure in acquainting the Department of Corrections with the details of the offense and the factors which influenced the court in imposing the sentence which it did. However, I have substantial doubt that it is either necessary or desirable to include in such a statement any recommendation concerning the defendant's future eligibility for parole. Such recommendations are usually sought at the time parole is considered and, accordingly, it would seem proper that any recommendations be made at that time. This is particularly true where the recommendation is inconsistent with what the court has already held to be an appropriate sentence. Where the prosecution intends to make such a recommendation it seems to me that due to the effect thereof, funda-

mental fairness requires that such intention be disclosed to the defendant.

Historically courts justified disregard of the existence of plea bargaining by rationalizing that only guilty persons pleaded guilty and those accused of criminal offenses had no right to any particular sentence. Since such reasoning has now been rejected it seems inconsistent to me to now declare that parole is a matter of grace available to persons who have pleaded guilty only because they are guilty. The rules, regulations and standards which are applicable to parole under a system administered by a professional staff are designed to avoid the concept of parole as a matter of grace. While parole is not a matter of right, a criminal offender in custody does have the right to have his release on parole considered according to the rules and regulations free from arbitrary or capricious action.