**UNITED STATES of America ex rel. James ROBINSON, Petitioner-Appellant,**

v.

**Thomas ISRAEL, Warden, Joliet Correctional Center and Allyn Sielaff, Director of Corrections, Respondents-Appellees.**

No. 77–1336.

United States Court of Appeals, Seventh Circuit.

Heard March 2, 1978.

Decided Aug. 22, 1978.

Rehearing and Rehearing En Banc Granted Oct. 12, 1978.

Steven M. Levin, Allan A. Ackerman, Chicago, Ill. (on briefs), for appellant.

Joseph P. Bohn, Asst. Atty. Gen., Chicago, Ill., for appellee.

Before FAIRCHILD, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.

CUMMINGS, Circuit Judge.

In November 1972, petitioner pled guilty to rape and received a 10- to 40-year sentence in the Circuit Court of LaSalle County, Illinois. In January 1973, he filed a post-conviction petition which was denied by that court after an evidentiary hearing. The denial was affirmed (*People v. Robinson*, 20 Ill.App.3d 112, 312 N.E.2d 703 (3d Dist. 1974) (Justice Stouder dissenting), in June 1974, and the Illinois Supreme Court denied his petition for leave to appeal in September 1974. Consequently, he filed a petition for writ of habeas corpus in the court below in February 1976. The petition was denied on February 15, 1977.

As a result of plea negotiations, petitioner agreed to plead guilty to the charge of rape and the prosecutor agreed to recommend a sentence of from 10 to 40 years. The trial court accepted that recommendation. Four days after petitioner was sentenced, the trial court and prosecutor signed and sent an Official Statement or "pen letter" to the Illinois Parole Board.

The "pen letter" was sent pursuant to Ill. Rev.Stat. (1971) ch. 108, § 203, now found at Ill.Rev.Stat. (1977), ch. 38, § 1005–4–1. The "pen letter" consisted of the prosecutor's statement of facts and circumstances surrounding petitioner's crime and concluded as follows:

"*Recommendation to Parole Board:*

It is recommended that this defendant serve the maximum time possible under the 10–40 year sentence imposed upon him."

In also signing the letter the judge who presided at petitioner's trial expressly concurred in the prosecutor's statements. Petitioner and his trial counsel did not know of the "pen letter"; petitioner came across it inadvertently in his prison file.

In denying the habeas corpus petition, the district judge filed an unreported supporting memorandum opinion concluding that there had been compliance with the plea bargain and that petitioner's guilty plea was not invalidated by the failure to advise him of the "pen letter" transmittal to the parole board recommending parole ineligibility. The opinion predated by about one month our decisions in *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180 (7 Cir. 1977), and *United States ex rel. Ferris v. Finkbeiner*, 551 F.2d 185 (7 Cir. 1977), which cause us to reverse the decision below.

Baker was accorded habeas corpus relief where "the two year mandatory parole term [of which he was uninformed when he entered his guilty plea] constituted a substantial addition to the one to two year prison term that he was told he would receive." We therefore held his guilty plea was unfairly induced in violation of the Due Process clause of the Fourteenth Amendment. 551 F.2d at 183, 184.

In *Ferris*, before he pled guilty the petitioner was incorrectly advised by the state court judge that he would not have to serve a mandatory five-year parole term. We again held that his due process rights were violated, so that his habeas corpus petition would be granted to permit him to plead anew "unless within 120 days, the State of Illinois takes action to vacate that portion

of the sentence which imposed the mandatory parole term of five years" (opinion as amended on August 25, 1977).

■ When Robinson pled guilty, he was not informed by the court that a "pen letter" was to be sent to the parole board recommending parole ineligibility. The Public Defender who represented Robinson was also uninformed of this plan. Robinson testified in the state court post-conviction hearing that he would not have pled guilty if he knew that the State's Attorney and presiding judge were going to recommend to the Illinois Parole Board that he serve the maximum of his 40-year sentence. His trial attorney reported that Robinson had rejected a state offer that involved a 20-year minimum term. The Executive Secretary and the former Chairman of the Illinois Parole and Pardon Board respectively testified or swore by affidavit that a "pen letter" so recommending would likely delay parole for several years and would be a critical factor in determining parole.[1] This meant that "any meaningful consideration of defendant's application would be delayed or postponed" (*People v. Robinson, supra,* 20 Ill.App.3d at 117, 312 N.E.2d at 706, dissenting opinion of Justice Stouder), thus extending Robinson's minimum period of incarceration.

Because at the time he pled guilty petitioner was uninformed about the "pen letter" procedure that could well lengthen his actual period of incarceration, petitioner's predicament is similar to that of Baker and Ferris. The state's response is that two principles distinguish this case from *Baker* and *Ferris.* First the state notes that the sentence received was not materially different from the sentence about which petitioner was informed because he was informed

that he would receive 10 to 40 years and his sentence fell within that range. Put another way, the argument is that petitioner only need be told of the range of punishment and not his actual sentence. See *Ruiz v. United States,* 494 F.2d 1 (5th Cir. 1974), certiorari denied, 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144; *United States v. Smith,* 440 F.2d 521, 533 (7th Cir. 1971) (Stevens, J., dissenting). As a practical matter, however, the state's argument ignores the fact that in Illinois the minimum sentence term was an accepted determinant of parole eligibility.[2] See *People v. Scott,* 117 Ill. App.2d 344, 350, 253 N.E.2d 553 (4th Dist. 1969). In fact, Illinois courts have made clear that the intent of an indeterminate sentence is to encourage rehabilitation by clearly identifying the opportunity for early release on parole. *People v. Harper,* 50 Ill.2d 296, 301, 278 N.E.2d 771 (1972). The petitioner here has established that he understood a 10–40 year sentence to mean that parole eligibility would begin after 10 years (less good time), and that understanding certainly was reasonable. In this context it is myopic to assume as the state does that a 10–40 year sentence means no more than that a defendant will be confined for some amount of time between 10 and 40 years; rather, as commonly understood the sentence carries with it a subsidiary standard for parole, which in practice has at least as much significance as a rarely served maximum limit. See generally *Durant v. United States,* 410 F.2d 689, 692 (1st Cir. 1969).

Consistent with this recognition of the importance of parole, it has never been the position of this Circuit that a plea colloquy was proper merely because the judge correctly outlined the range of possible punish-

---

1. While it is true as the state contends (Br. 11) that both men said that the recommendation was only one of many factors, petitioner did not take any statements out of context in concluding that the recommendation was established as a particularly important factor. The Executive Secretary in comparing the weight of this factor to the weight of other factors testified that the parole board "would be looking for many factors to outweigh that kind of thing" (Tr. 70). Similarly, the former chairman identified the importance of a recommendation

in comparison with other factors by stating: "It would be one of many factors that would be considered, but I think it would be a critical factor" (Tr. 79).

2. The statute under which petitioner was sentenced provides that a prisoner is eligible for parole when he has served the minimum term of an indeterminate sentence less time credited for good behavior. Ill.Rev.Stat. ch. 38, § 1003–4.

ment.[3] Although then-Judge Stevens argued that position concurring in *Bachner v. United States,* 517 F.2d 589, 599 (7th Cir. 1975), Judge Tone's majority opinion in denying Bachner's contention that he should have been informed of his parole ineligibility relied on the fact that Bachner knew that parole eligibility was uncertain. 517 F.2d at 595. *Bachner's* implicit recognition, consistent with the holding of the majority in *United States v. Smith,* 440 F.2d 521 (7th Cir. 1971), that ignorance of parole eligibility at least can suffice to allow a federal petitioner to vacate a guilty plea on appeal derives considerable support from prior precedent.[4] *Paige v. United States,* 443 F.2d 781 (4th Cir. 1971); *Moody v. United States,* 469 F.2d 705 (8th Cir. 1972); *Durant v. United States,* 410 F.2d 689, 692 (1st Cir. 1969); but see *Trujillo v. United States,* 377 F.2d 266 (5th Cir. 1967), certiorari denied, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221.

■ In considering whether this type of misunderstanding also is a sufficient basis for a due process collateral attack on a state conviction, *Baker* and *Ferris* provide the relevant standard. That standard is that "the plea must withstand collateral attack unless the sentence actually imposed upon Baker significantly differed from the sentence which the prosecutor and the trial court promised him." 551 F.2d at 183. Here as Justice Stouder noted in his dissent, "defendant's potential release on parole would be considered as if a greater minimum sentence had been imposed" (20 Ill. App.3d at 117, 312 N.E.2d at 706); therefore the *Baker* standard is satisfied. More-

over, as explained in *Bell v. United States,* 521 F.2d 713, 715 (4th Cir. 1975), the record in this case affirmatively demonstrates that petitioner was misled in fact about the meaning of the sentence he was to receive. See *Bachner v. United States,* 517 F.2d 589 (7th Cir. 1975); cf. *United States ex rel. Ferris v. Finkbeiner,* 551 F.2d 185, 186 (7th Cir. 1977). Thus the fact that petitioner received between 10 and 40 years does not disprove the applicability of *Baker* and *Ferris.*

Alternatively, the state argues that the sentence differed materially only if the "pen letter" had an effect on the parole board, and that the trial court cannot be expected to inform a defendant of the many factors that may affect the board. Further, the state argues, the "pen letter" does not affect eligibility for parole *per se* and does not have an automatic impact on the decision whether to grant parole. Cf. *Cuthrell v. Director, Patuxent Institution,* 475 F.2d 1364 (4th Cir. 1973), certiorari denied, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241. While it is true that a trial judge has no constitutional responsibility to inform a defendant of the many diverse indices on which a future parole decision may be based, two elements in this case combine to justify an exception from that general proposition. First, it was demonstrated in this record that a "pen letter" recommendation of an extended prison term has a particularly significant effect on parole determinations. The fact that defendant technically is still eligible for parole at an early date is of little practical significance if as the record demonstrates the "pen letter"

**3.** Contrary to the state's claim, the recognized importance of parole is not based on the assumption of a constitutional right to parole. The petition here is based on an expectation of parole opportunities and a misunderstanding regarding that expectation. The subjects on which a trial court must inform a defendant in order to avoid such a misunderstanding have not been limited to subjects that are tied to constitutional rights. See e. g., *United States ex rel. Baker v. Finkbeiner,* 551 F.2d 180 (7th Cir. 1977).

**4.** Holdings to the contrary when a defendant is unexpectedly sentenced under the Youth Corrections Act (see, e. g., *Robinson v. United States,* 474 F.2d 1085 (10th Cir. 1973)) are

distinguishable because in those cases the unexpected sentence has both advantages and disadvantages and therefore the effect of not informing the defendant is less certain and less unfair. In contrast, this "pen letter" recommendation could only have one effect on the length of petitioner's incarceration. While some courts also have denied relief in cases in which a special parole term within the maximum period of incarceration is imposed, in *Bachner v. United States,* 517 F.2d 589, 597 (7th Cir. 1975), we distinguished the effects of ineligibility for parole from the effects of adding a mandatory parole term and explained that a defendant was much more likely to be influenced by knowledge of ineligibility.

recommendation has effectively changed the sentence into one with a greater minimum.[5] Nor is it persuasive to note that petitioner might have been denied early parole on the basis of other items in his file; petitioner's claim is not that he automatically would have been given parole at an early date but rather that at each parole consideration the "pen letter" will have the effect of decreasing whatever chance of parole the remainder of his file would have offered.[6]

Second, because the trial judge participated in putting the recommendation before the parole board and in urging its reception, unlike other factors considered by the parole board it is not forcing him to rely too heavily on possible acts by others to require him to advise a defendant that such material will be considered by the board. In fact, it can be argued that there is a special need to advise a defendant about the possibility of such a recommendation because unlike the other factors in his parole file (such as the facts of his crime and his prison activities, of which a defendant is likely to be either aware or have some control), a "pen letter" recommendation is likely to be made (and was made here) without the defendant's knowledge. The record in the state proceedings establishes that while the prosecutor was required to write a "pen letter" discussing the offense and the offender (Ill.Rev.Stat. ch. 38, § 1005–4–1), including a recommendation against parole is a departure from normal practice.[7]

To the extent that a consideration of petitioner's claim turns on whether the procedures were fundamentally fair (see *United States v. Smith,* 440 F.2d 521, 529–531 (7th Cir. 1971) (Stevens, J., dissenting)), if

even a prosecutor has an obligation not to undermine a plea he bargained (cf. *United States v. Brown,* 500 F.2d 375 (4th Cir. 1974)), certainly a judge charged with the constitutional responsibility of making a defendant aware of the consequences of his plea (*Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 should not without warning feel free to do his utmost to change the practical effect of the defendant's plea away from what the defendant understood. Of course our holding that he cannot do so does not mean that a trial judge cannot or should not sign a "pen letter" recommending a maximum term of incarceration. It only means that before taking such an unforeseen step that as a practical matter has a significant effect on the length of a defendant's incarceration, he should advise the defendant of the possibility of that step.

Anticipating that we might so conclude, the Illinois Attorney General has recommended alternatively to affirmance:

> "The District Court should be ordered to reverse and remand with instructions to grant the petition for a writ of habeas corpus to permit Robinson to plead anew, unless, within 120 days, the State of Illinois takes action to excise that portion of the 'Official Statement of State's Attorney and Trial Judge' of November 21, 1972, recommending that Robinson serve the maximum time possible under the 10–40 year sentence imposed upon him."

We adopt that commendable suggestion together with the additional requirement that the State of Illinois arrange for different members of the Parole Board than those who denied petitioner parole in October

---

**5.** Because *Baker* turns on the extent of the consequences and not on whether the consequence is characterized as direct or collateral (compare *United States v. Lambros,* 544 F.2d 962, 966–967 (8th Cir. 1967), certiorari denied, 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774, we need not attempt to characterize this consequence. Cf. *Durant v. United States,* 410 F.2d 689 (1st Cir. 1969).

**6.** Of course the state does not seriously contend that the recommendation will have no

effect whatsoever on petitioner's parole opportunity, since to do so would leave little reason to contest striking the recommendation.

**7.** The state did not argue on appeal that petitioner should have known that the trial judge might be asked to make a recommendation at a later time, nor did it show that such a recommendation appeared as often or was given as much weight as one in a "pen letter."

1977 to consider any of his subsequent applications for parole.[8]

Reversed and remanded for further proceedings consistent herewith.

### ORDER

On Consideration of the petition for rehearing and suggestion for rehearing *en banc* filed in the above-entitled cause by respondents-appellees, a vote of the active members of the Court was requested, and a majority of the active members[*] of the Court have voted to grant a rehearing *en banc*. Accordingly,

IT IS ORDERED that the aforesaid petition for rehearing be, and the same is hereby, GRANTED.

---

**8.** While this case was on appeal, Illinois revised by statute its sentencing and parole procedures. Those revisions do not avoid the need for relief because the new Ill.Rev.Stat. ch. 38 § 1003–3–2.1(c) gives prisoners sentenced under the old statutory scheme the choice of accepting a mandatory release date or of pursuing parole under the old rules. If petitioner chose to pursue parole, the remedy suggested in the text is appropriate. If petitioner chose a release date instead of parole based on his minimized opportunity for parole, he should be given the opportunity to make the choice again.

Because of our conclusion that *Baker* and *Ferris* require reversal, we do not reach petitioner's alternate contention that by authoring the recommendation, which undermined the practical advantage of the parole opportunity promised to the defendant by the 10–40 year sentence, the prosecutor breached an implied promise under *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427. Cf. *United States v. Brown,* 500 F.2d 375 (4th Cir. 1975).

* Chief Judge Fairchild, and Judges Swygert and Cummings voted to deny a rehearing *en banc*.