**UNITED STATES of America ex rel. James ROBINSON, Petitioner-Appellant,**

v.

**Thomas ISRAEL, Warden, Joliet Correctional Center and Allyn Sielaff, Director of Corrections, Respondents-Appellees.**

No. 77–1336.

United States Court of Appeals, Seventh Circuit.

Reheard Dec. 11, 1978.

Decided Aug. 1, 1979.

Steven M. Levin, Chicago, Ill., for petitioner-appellant.

Melbourne A. Noel, Chicago, Ill., for respondents-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT, CUMMINGS, PELL, SPRECHER, TONE, BAUER and WOOD, Circuit Judges.

ON REHEARING EN BANC

BAUER, Circuit Judge.

Petitioner-appellant James Robinson appeals from the order of the district court dismissing his petition for a writ of habeas corpus, in which he challenged his present incarceration on the ground that his plea of guilty in state court was constitutionally invalid. The sole issue on appeal is whether the petitioner's negotiated plea to an indeterminate sentence of from ten to forty years imprisonment violated the due process clause where, subsequent to the trial court's acceptance of the plea and imposition of the recommended sentence, the prosecutor and the trial court, without informing the petitioner, recommended as part of a statutorily required statement to the Illinois Parole and Pardon Board that the petitioner serve the maximum time possible under the sentence imposed. We conclude that petitioner has not stated a constitutional claim cognizable under 28 U.S.C. § 2254, and therefore affirm the judgment appealed from for the reasons set forth below.

I

On November 17, 1972, pursuant to a plea agreement in which the sentencing judge did not participate, petitioner entered a plea of guilty to the charge of forcible rape.

In accordance with the agreement, the trial court sentenced the petitioner to a ten to forty year prison term. Four days later, the prosecutor prepared an Official Statement of State's Attorney and Trial Judge, commonly referred to as a "pen letter", which was signed by both the prosecutor and the sentencing judge. The "pen letter" was sent to the Illinois Parole and Pardon Board pursuant to Ill.Rev.Stat. (1971), ch. 108, § 203, now codified at Ill.Rev.Stat. (1977), ch. 38, §§ 1005–4–1. The "pen letter" contained the prosecutor's statement to the parole board of the facts and circumstances surrounding the petitioner's crime, and concluded with the prosecutor's and sentencing judge's recommendation on the petitioner's future eligibility for parole, as follows:

*"Recommendation to Parole Board:*

It is recommended that this defendant serve the maximum time possible under the 10–40 year sentence imposed upon him."

Petitioner subsequently discovered the existence of the "pen letter" upon reviewing his prison file and in January, 1973, filed a post-conviction petition challenging the entry of his guilty plea. This petition was denied by the trial court at the conclusion of an evidentiary hearing, and the denial was affirmed by the Illinois Appellate Court in June, 1974. *People v. Robinson*, 20 Ill.App.3d 112, 312 N.E.2d 703 (3rd Dist. 1974) (Justice Stouder dissenting). The Illinois Supreme Court denied petition for leave to appeal in September, 1974.

In February, 1976, petitioner brought the present action, seeking federal habeas corpus relief on the grounds that his plea was induced by false promises of the prosecutor and the trial judge, and that he did not knowingly and voluntarily enter his plea of guilty because at the time of his plea he was not sufficiently advised of the consequences of his plea. Following a plenary hearing, the district court dismissed the petition on February 15, 1977, and the petitioner appealed from that judgment to this Court. On August 22, 1978, a three-judge panel of this Court reversed and remanded

the district court order. *United States ex rel. Robinson v. Israel*, 581 F.2d 1276 (7th Cir. 1978). Subsequently upon the granting of the petition to that effect, the case was reheard by the Court *en banc.*

## II

Petitioner asserts two grounds as the basis for vacating his guilty plea and permitting him the opportunity to plead anew. First, he contends that the plea agreement was breached by the sending, without his knowledge, of the "pen letter" recommendation opposing his parole. Second, petitioner contends that his plea was not made knowingly and voluntarily because he was not informed that as a consequence of his plea and the unfavorable parole recommendation his parole could be delayed several years. We are unpersuaded by the arguments advanced in support of these contentions and accordingly conclude, as did the district court, that there was compliance with the plea bargain agreement and that the petitioner's guilty plea was not invalidated by the failure to advise him of the "pen letter" transmittal to the parole board recommending parole ineligibility.

Petitioner relies on *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) as support for his contention that the plea agreement was breached by the unfavorable parole recommendation. We find petitioner's reliance on *Santobello* to be misplaced. The holding in *Santobello* required strict adherence to the specific and express terms of the plea agreement reached between the criminal defendant and the state. In the instant case, the trial judge clearly abided by the express terms of the plea agreement: Robinson was promised and received a ten to forty year prison term in return for his guilty plea. The prosecutor made no promise whatsoever with regard to parole. Indeed, as the petitioner himself admitted at his state court post-conviction hearing, the subject of parole was never raised during the plea negotiations. Since the prosecutor made no specific, express sentencing promise concerning parole, it cannot be said that,

under the strictures of *Santobello,* petitioner's plea was invalid. Nor can it be said that the prosecutor in this case even "implied" a promise not to make any recommendation concerning parole, for, as this Court has previously held, proceedings before a parole board are not part of the sentencing process or a criminal prosecution. *Ganz v. Bensinger,* 480 F.2d 88, 89 (7th Cir. 1973). Thus, petitioner received the exact sentence he bargained for in exchange for his plea of guilty, and we are therefore satisfied that there was full compliance with the plea bargain.

■ Petitioner further contends that his plea was not rendered knowingly and voluntarily due to the failure of the trial court to admonish him concerning the fact that an unfavorable parole recommendation would be sent to the parole board as part of the "pen letter". While it is true, as petitioner asserts, that *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), required that a defendant entering a plea must be informed of the consequences of the plea, only *direct* consequences of the plea must necessarily be explained to the defendant. *United States v. Lambros,* 544 F.2d 962, 966–967 (8th Cir. 1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). In this case, the fact that the "pen letter" was to be sent to the parole board after the imposition of the sentence, and that the recommendation expressed therein allegedly could affect petitioner's parole, is properly characterized as a collateral consequence of the petitioner's plea. Accordingly, we hold that the trial court's failure to advise the petitioner of such a collateral consequence of his plea does not reach constitutional proportions invalidating an otherwise valid plea.

We are aware of no persuasive authority to the contrary. Subsequent to the district court decision in this case, this Court held that the failure to admonish a criminal defendant concerning the mandatory parole term accompanying his sentence violated the due process clause. *United States ex rel. Baker v. Finkbeiner,* 551 F.2d 180 (7th Cir. 1977); *United States ex rel. Ferris v.*

*Finkbeiner,* 551 F.2d 185 (7th Cir. 1977). *Baker* and *Ferris* established the constitutional standard to be applied in determining whether the circumstances surrounding a state defendant's guilty plea violated the due process clause: "the plea must withstand collateral attack unless the sentence actually imposed . . . significantly differed from the sentence which the prosecutor and the trial court promised . . ." *Baker, supra* at 183. In granting the writ of habeas corpus in *Baker,* the Court found that the statutory addition of a two year mandatory parole term, of which Baker was never informed, constituted a substantial addition to the one to two year prison term he was told he would receive. The Court thus concluded that Baker was deprived of the benefit of his plea bargain because he in reality received three to four years in custody instead of the one to two years he was promised.

However, the considerations found to be controlling in *Baker* and *Ferris* are absent in the context of the present case. In this case, petitioner was promised and received a ten to forty year prison term in exchange for his guilty plea. The fact that the prosecutor and trial judge later recommended to the parole board that petitioner serve the maximum time under the sentence imposed does not constitute an addition to the term he was promised. Regardless of the effect that recommendation might have on his parole eligibility, petitioner will never be in custody longer than he was told he would be. Thus, unlike the defendant in *Baker,* petitioner received exactly what he was promised: custody of from ten to forty years. He therefore obtained the benefit of his bargain and suffered no prejudice in derogation of the due process clause.

Robinson nevertheless argues that he did not receive the sentence he was promised because the "pen letter" recommendation to the parole board would have the effect of extending the *minimum* time he must serve before being released on parole. In this regard, Robinson asserts that the statute under which he was sentenced provides that a prisoner is eligible for parole when he has

served the minimum term of an indeterminate sentence less time credited for good behavior, and that he therefore tendered his plea of guilty based on his understanding that the sentence imposed carried with it this subsidiary standard for parole eligibility. Accordingly, petitioner contends he would not have entered a guilty plea if he had been apprised of the unfavorable parole recommendation. In support of this contention, petitioner relies on certain testimony given at the state trial court hearing on his post-conviction relief petition that the "pen letter" recommendation would effectively change the sentence into one with a greater minimum.

We find petitioner's contention that, as a result of the "pen letter" recommendation, his plea was not knowingly and voluntarily rendered to be without merit. First, it is settled in both federal and Illinois law that normal discretionary parole is a matter of grace and not of right. *United States ex rel. Holderfield v. Ragen*, 170 F.2d 189 (7th Cir. 1948), *cert. denied*, 336 U.S. 906, 69 S.Ct. 485, 93 L.Ed. 1071 (1949); *People v. Hawkins*, 54 Ill.2d 247, 296 N.E.2d 725, 727 (1973). However reasonable petitioner's expectation concerning his parole eligibility may have been, the denial or grant of parole is a matter entirely within the discretion of the parole board.

Second, an examination of the post-conviction hearing transcript compels the conclusion that the "pen letter" recommendation is properly regarded as nothing more than that—a mere recommendation. As such, it may be accorded only such weight as its merit commands and the sound discretion of the parole board warrants. Certainly, the board is not bound by such a recommendation, and relative to the other factors to be considered by the parole board in making a determination to release the petitioner on parole, it cannot be said that the recommendation by itself will make him either ineligible for parole or delay his parole. The executive secretary and a former acting chairman of the Illinois Parole and Pardon Board both testified at the post-conviction hearing that the recommendation would have *no* effect on petitioner's parole eligibility. Despite the recommendation, the board will first consider him for parole at the time he has served the minimum sentence less good time credit. Among the other factors considered by the board would be the heinous nature of the petitioner's crime and his past record, and there is a possibility that petitioner would be denied parole at the earliest opportunity on this basis alone. Additionally, when petitioner became eligible for parole, the prosecutor, trial judge, and victim would be notified and their opinions solicited concerning petitioner's application for release on parole. Finally, both individuals testified that they did not know and could not accurately predict what the actual effect of the "pen letter" would be. Accordingly, the record does not support the petitioner's contention that the recommendation opposing his parole has effectively changed the sentence he received into one with a greater minimum term.

Finding no constitutional infirmity in the petitioner's plea, we conclude petitioner has not stated a claim cognizable under 28 U.S.C. § 2254. For the foregoing reasons, the judgment appealed from is affirmed, and the Clerk of this Court is directed to enter judgment accordingly.

Affirmed.

CUMMINGS, Circuit Judge, with whom FAIRCHILD, Chief Judge, and SWYGERT, Circuit Judge, join, dissenting.

I dissent for the reasons expressed in the panel opinion reported in 581 F.2d 1276.