THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD JOHNSON, Defendant-Appellant.

First District (6th Division)    No. 1—07—3325

Opinion filed June 12, 2009.—Rehearing denied July 23, 2009.

Patricia Unsinn and David T. Harris, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Kathleen Warnick, and Amanda L. Warmington, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McBRIDE delivered the opinion of the court:

Defendant, Donald Johnson, appeals from an order of the circuit court of Cook County granting the State's motion to dismiss his successive petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2004)). He contends that the circuit court erred in dismissing his petition where he made a substantial showing that he did not receive the benefit of the bargain he made with the State when he pled guilty to possession of a controlled substance and aggravated kidnapping because the court did not advise him that his sentence would include a three-year period of mandatory supervised release (MSR). For the reasons that follow, we affirm.

Defendant was charged by indictment with possession of a controlled substance and aggravated kidnapping.[1] After initially pleading not guilty to these charges, defendant appeared in court on February 28, 2002, where the following colloquy took place:

"THE COURT: We did a [Rule] 402 conference, but basically there has now been an offer?

MR. BUFFARDI [Defense Counsel]: That is correct, your honor. And pursuant to the conference and the discussions had in the conference, at this time, on—

THE COURT: But I mean this plea is pursuant to a negotiated offer now?

MR. BUFFARDI: That is correct.

THE COURT: Right, State?

MR. STAKE [Assistant State's Attorney]: Yes, sir.

THE COURT: Although we started a conference, and we are within the boundaries of my conference, but you fine tuned it now on your own.

MR. BUFFARDI: That is correct, your Honor.

\* \* \*

THE COURT: While you're attempting to find it, here's what I understand the resolution is today.

\* \* \*

On case number 00 CR 19149, he plead[s] guilty to count 2, that count being aggravated kidnapping, he would be sentenced to 14 years Illinois Department of Corrections. That is an 85 percent

---

[1]Specifically, in June of 2000, defendant was charged by indictment with, among other things, possession of a controlled substance (possession of 15 grams or more but less than 100 grams of cocaine) based upon events that occurred on February 26, 2000. In August of 2000, defendant was charged by indictment with, among other things, aggravated kidnapping based upon events that took place on July 10, 2000.

sentence. If you plead guilty to Count 2 as amended, in Case Number 00—13857, you'd be sentenced to four years. It's not an 85 percent. That is not an 85 percent.

MR. BUFFARDI: That is not an 85 percent.

THE COURT: But it would be consecutive with the first one.

MR. BUFFARDI: That's correct. Is that your understanding?

DEFENDANT: Yes, sir.

MR. BUFFARDI: Judge, with that understanding, the defendant would withdraw his heretofore entered pleas of not guilty and enter a plea of guilty as to each count that your Honor just recited."

The court advised defendant of the minimum and maximum penalties for the charge of aggravated kidnapping as follows:

"THE COURT: That is a Class X felony. That is punishable from 6 to 30 years in the penitentiary, a fine up to $25,000, and a period of mandatory, supervised release.

Do you understand what the possible penalties are?

DEFENDANT: Yes, sir.

THE COURT: Knowing what you're charged with in that case, and knowing what the possible penalties are, do you still wish to plead guilty to that case?

DEFENDANT: Yes, sir."

The court further advised defendant as to the range of penalties for the charge of possession of a controlled substance:

"THE COURT: As charged, a Class 1 felony, you'd be sentenced in that case from 4 to 15 years in the penitentiary, a fine up to $25,000, and a period of mandatory, supervised release.

Do you understand what the possible penalties are in that case?

DEFENDANT: Yes, sir.

THE COURT: Knowing what you're charged with and knowing what the possible penalties are, do you still wish to plead guilty to those two charges?

DEFENDANT: Yes, sir."

The trial court then advised defendant as follows:

"THE COURT: Now, that first case I told you, aggravated kidnapping, whatever sentence I give you must be served 85 percent.

Do you understand that?

DEFENDANT: Yes, sir.

THE COURT: And if I did sentence you to 14 years in the penitentiary as suggested by the State and your attorney, you would have to serve 11.9 of those years.

Do you understand that?

On the second case which would be consecutive it would be four years, the consecutive meaning the four years would start accumulating time after 11.9 years.

DEFENDANT: Yes, sir.

THE COURT: And that is not an 85 percent on the four years. And based on good time, that may be two years, but that is up to the Department of Corrections.

Do you understand that?

DEFENDANT: Yes, sir.

MR. STAKE: Your honor, in terms of which occurred first, the drug charge is first. So he would do the—

THE COURT: Do the four years first.

MR. STAKE: —time on the drug charge first.

THE COURT: If I sentence you this way, the four years would be first. You'd get good time, and then you'd serve 85 percent of the 14 years which would be 11.9.

Do you understand that?

DEFENDANT: Yes, sir.

THE COURT: Knowing what you are charged with, knowing what the possible penalties are, knowing what your rights are under the law, do you still wish to plead guilty to that charge?

DEFENDANT: Yes, sir."

The trial court then ascertained defendant's understanding of his trial rights and waiver of those rights. Defendant also confirmed that no one had made any threats or promises in order for him to plead guilty and that he was pleading guilty freely and voluntarily. Finally, the trial court posed the following question to defendant:

"THE COURT: Apart from the recommended plea agreement, has anyone made any promises to you about what I would or would not do if you plead guilty?

DEFENDANT: No, sir."

The State then offered a factual basis for the plea. With respect to the charge of possession of a controlled substance, the evidence the State would have presented at trial established that on February 26, 2000, two police officers stopped defendant after he was observed speeding and placed him into custody after discovering that his driver's license was suspended. During a search of defendant's vehicle, the police discovered two canisters that contained a white powder that was subsequently analyzed and found to be 23 grams of cocaine. With respect to the charge of aggravated kidnapping, the evidence that would have been presented at trial established that on July 10, 2000, defendant and three other individuals, all armed with handguns, entered a garage and "duct taped" four other individuals who were in the garage at the time. One of these victims was also handcuffed and driven by defendant and the other men to another location in Chicago, where defendant ultimately fled the vehicle and was captured by police.

Defense counsel stipulated to this evidence and the trial court found it sufficient to support the plea. The court accepted defendant's plea of guilty, finding that it was entered knowingly and voluntarily and that defendant understood the charges against him, the possible range of penalties, and his rights according to the law.

With respect to sentencing, the State pointed out that, in aggravation, defendant had at least three prior felony convictions for which he had been sentenced to the penitentiary. Defense counsel stood on the mitigating evidence presented in the conference. Before imposing sentence, the court stated:

"Mr. Johnson, based on matters brought out in the conference, based on the fact that the plea I am taking here today is based on discussions between your attorney and the State on negotiated plea recommendation—recommended disposition to the Court, I find it to be a reasonable recommendation. And I am going to go along with the recommendation."

The court sentenced defendant to 4 years' imprisonment for possession of a controlled substance and to a consecutive term of 14 years' imprisonment for aggravated kidnapping. The court also admonished defendant of his appeal rights and defendant confirmed that he understood. The State filed a motion to nol pros the remaining 17 counts that were filed along with the aggravated kidnapping charge and the remaining 3 counts filed along with the possession charge.

Defendant filed a *pro se* postconviction petition on June 24, 2004, which was dismissed by the circuit court as frivolous and patently without merit. He did not challenge his term of mandatory supervised release in that petition.

Defendant filed a successive *pro se* postconviction petition on February 7, 2005. He alleged, among other things, that a three-year period of mandatory supervised release violated the terms of his guilty plea. On October 26, 2007, the trial court appointed counsel to represent defendant on his postconviction petition. Defendant, through counsel, filed a supplemental postconviction petition on March 30, 2007. He alleged that the trial court failed to advise him that his consecutive sentences of 4 and 14 years' imprisonment included a 3-year period of mandatory supervised release, and asked the court to reduce his term of imprisonment by 3 years in order to reflect the sentence he agreed to serve. Defendant also alleged that he had good "cause" for failing to raise the issue in his initial postconviction petition and that he was prejudiced by the alleged error. Specifically, defendant argued that his claim regarding the period of mandatory supervised release was based on the decision in *People v. Whitfield*, 217 Ill. 2d 177 (2005), which was issued after his initial postconviction

petition was filed and summarily dismissed and that, prior to that decision, the case law regarding mandatory supervised release was unfavorable to his cause. Defendant further claimed that he was prejudiced by the alleged error in that his claim was meritorious pursuant to *Whitfield*.

The State filed a motion to dismiss defendant's petition, arguing that his claim regarding the term of mandatory supervised release was procedurally defaulted because it was not raised in his initial postconviction petition. The State asserted that the principles upon which defendant based that claim were established prior to defendant's guilty plea and were not so novel as to excuse the failure to raise the issue in his first postconviction petition.

The trial court granted the State's motion and dismissed defendant's petition. The court initially stated that it was not going to grant the motion based on timeliness or whether the petition was properly before the court but, rather, that it was going to rule based upon the admonitions that were given to defendant. The court noted that it admonished defendant that his sentence would include a term of mandatory supervised release but acknowledged that it did not tell him that the term of that supervised release would be three years. The court further noted that defendant indicated he understood the possible penalties for each offense to which he was pleading guilty and stated that it believed defendant's attorney would have advised him as to the length of the term of mandatory supervised release. Accordingly, the court concluded that defendant "knew the benefit of the bargain" at the time he pled guilty. The trial court thereafter denied defendant's motion for reconsideration, and this appeal followed.

On appeal, defendant contends that the trial court erred in dismissing his postconviction petition. Specifically, defendant asserts that he was denied the "benefit of the bargain" he made with the State and that his due process rights were violated because the trial court failed to admonish him that he would be subject to a three-year period of mandatory supervised release following his term of imprisonment. Defendant requests that we reduce his term of imprisonment by three years to approximate the terms of the plea agreement he reached with the State.

Before addressing the merits of this argument, we must first determine whether defendant's successive postconviction petition is procedurally barred. The Act contemplates the filing of only one postconviction petition, and any claim not raised in that petition is waived. *People v. Tenner*, 206 Ill. 2d 381, 392 (2002); 725 ILCS 5/122—3 (West 2004). In this case, it is undisputed that defendant did not raise his claim regarding mandatory supervised release in his initial postconvic-

tion petition, and therefore it may be deemed waived. See *People v. Jones*, 191 Ill. 2d 194, 199 (2000).

■ However, the procedural bar of waiver may be relaxed with respect to successive postconviction petitions when fundamental fairness so requires. *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002). Our supreme court has held that the "cause-and-prejudice" test is the proper means to determine whether fundamental fairness requires that a claim raised in a successive postconviction petition may by considered on its merits. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002). Under this test, claims in a successive petition are barred unless defendant can show cause for failing to raise the claim in his initial postconviction petition and prejudice resulting from the failure. 725 ILCS 5/122—1(f) (West 2004). To show "cause," defendant must demonstrate that "some objective factor external to the defense impeded his ability to raise the claim in the initial post-conviction proceeding." *People v. Tenner*, 206 Ill. 2d 381, 393 (2002). To show "prejudice," defendant must demonstrate that the claimed error so infected his trial that the resulting conviction violated due process. *Tenner*, 206 Ill. 2d at 393. Defendant has the burden of establishing both elements of the cause-and-prejudice test in order to prevail. *Pitsonbarger*, 205 Ill. 2d at 464.

In seeking to satisfy the cause requirement, defendant asserts that the legal basis for his claim was not available because *Whitfield* was decided after his initial postconviction petition was filed. Defendant further asserts that prior to *Whitfield*, in order to establish a due process violation based upon the trial court's failure to admonish a defendant regarding mandatory supervised release, a defendant was required to raise a good-faith argument that he would not have pled guilty had he been aware of the term of mandatory supervised release. Defendant claims that the court in *Whitfield* rejected this requirement and that, therefore, in this case, had the trial court ruled on defendant's mandatory supervised release claim prior to *Whitfield*, it would have been constrained to deny the claim because defendant did not allege that he would not have pled guilty had he been aware of MSR. Finally, defendant argues that *Whitfield* altered the remedy available for due process claims based on insufficient MSR admonishments and that, prior to *Whitfield*, a defendant who raised this issue risked the vacatur of his guilty plea and an increased sentence upon a new conviction, when the defendant may simply have wanted the enforcement of the bargain for which he pled guilty.

In *Whitfield*, the defendant pled guilty to felony murder and armed robbery pursuant to a negotiated plea agreement that provided he would receive concurrent sentences of 25 and 6 years' imprisonment.

The trial court ratified the agreement but failed to admonish the defendant that, pursuant to section 5—8—1(d)(1) of the Unified Code of Corrections (the Code) (730 ILCS 5/5—8—1(d)(1) (West 1998)), he would be subject to a three-year MSR term following his release from prison.[2] *Whitfield*, 217 Ill. 2d at 179-80. The defendant learned of the MSR term while serving his sentence and thereafter sought postconviction relief, arguing that his due process rights were violated because the MSR term of which he was not advised "had been added to his negotiated sentence and resulted in a 'more onerous' sentence than the one he had agreed to when he pled guilty." *Whitfield*, 217 Ill. 2d at 180. Rather than seeking to withdraw his guilty plea, the defendant sought specific performance of the plea agreement and asked the court to eliminate the MSR term or to reduce his sentence by the length of the MSR term. *Whitfield*, 217 Ill. 2d at 181. The circuit court dismissed the petition at the second stage and the appellate court affirmed.

On appeal to the supreme court, the defendant argued that due process and Illinois Supreme Court Rule 402(a) required that the trial court admonish him regarding the MSR term prior to accepting his guilty plea. He asked the court to afford him the "benefit of his plea bargain" by modifying his sentence to a term of 25 years, inclusive of the three-year MSR term. *Whitfield*, 217 Ill. 2d at 182. Our supreme court agreed with the defendant, recognizing that a defendant's due process rights may be violated where he does not receive the "benefit of the bargain" of his plea agreement with the State. *Whitfield*, 217 Ill. 2d at 186. The court held that, under the circumstances of that case, "adding the statutorily required three-year MSR term to defendant's negotiated 25-year sentence amounts to a unilateral modification and breach of the plea agreement by the State, inconsistent with constitutional concerns of fundamental fairness. We believe this conclusion is in conformity with earlier decisions of this court and with decisions reached by other jurisdictions." *Whitfield*, 217 Ill. 2d at 190-91. The court went on to state:

"[A]lthough substantial compliance with Rule 402 is sufficient to establish due process [citations], and an imperfect admonishment

---

[2] Section 5—8—1(d)(1) of the Code provides:

"Except where a term of natural life is imposed, every sentence shall include as though written therein a term in addition to the term of imprisonment. *** For those sentenced on or after February 1, 1978, such term shall be identified as a mandatory supervised release term. Subject to earlier termination under Section 3—3—8, the parole or mandatory supervised release term shall be as follows:

(1) for first degree murder or a Class X felony, 3 years." 730 ILCS 5/5—8—1(d)(1) (West 1998).

is not reversible error unless real justice has been denied or the defendant has been prejudiced by the inadequate admonishments [citation], there is no substantial compliance with Rule 402 and due process is violated when a defendant pleads guilty in exchange for a specific sentence and the trial court fails to advise the defendant, prior to accepting his plea, that a mandatory supervised release term will be added to that sentence. In these circumstances, addition of the MSR term to the agreed-upon sentence violates due process because the sentence imposed is more onerous than the one defendant agreed to at the time of the plea hearing. Under these circumstances, the addition of the MSR constitutes an unfair breach of the plea agreement." *Whitfield*, 217 Ill. 2d at 195. With respect to the appropriate remedy, the court reviewed cases from both Illinois and other jurisdictions and concluded that "the appropriate remedy is to modify defendant's sentence to a term of 22 years of imprisonment, to be followed by the mandatory 3-year term of supervised release." *Whitfield*, 217 Ill. 2d at 205.

In this case, although *Whitfield* was decided after defendant's initial postconviction petition was filed and dismissed, our review establishes that the legal foundation for his claim was laid long before *Whitfield*. The "benefit of the bargain" concept upon which defendant's claim is based was first announced in *Santobello v. New York*, 404 U.S. 257, 262, 30 L. Ed. 2d 427, 433, 92 S. Ct. 495, 499 (1971). In that case, the defendant agreed to plead guilty in exchange for, among other things, a promise by the prosecutor that no sentencing recommendation would be made by the government. Defendant pled guilty and, at sentencing, the prosecutor recommended a sentence which was adopted by the court. The United States Supreme Court reversed and remanded for further proceedings, holding that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262, 30 L. Ed. 2d at 433, 92 S. Ct. at 499.

Moreover, our supreme court first held that a defendant must be admonished that the mandatory period of parole (now called mandatory supervised release) pertaining to the offense is a part of the sentence that will be imposed in *People v. Wills*, 61 Ill. 2d 105, 109 (1975). The decision in *Wills* was cited to by the United States Court of Appeals for the Seventh Circuit when it considered a claim similar to the one raised by defendant in this case and by the defendant in *Whitfield* in *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180 (7th Cir. 1977). In that case, the defendant pled guilty in exchange for the promise of a specific sentence but was not told that his sentence

included a two-year parole term. Citing *Santobello*, the court held that the mandatory parole term constituted a substantial addition to the sentence the defendant had been promised and that therefore he had been deprived of the benefit of his plea bargain in violation of due process. *Baker*, 551 F.2d at 181-84; see also *United States ex rel. Ferris v. Finkbeiner*, 551 F.2d 185 (7th Cir. 1977) (following *Baker* and holding that the defendant's due process rights were violated and that he was denied the benefit of the bargain where he pled guilty in exchange for the promise of a specific sentence but was not advised regarding the term of mandatory parole).

Our supreme court considered a claim similar to the one defendant raises in this case in *People v. McCoy*, 74 Ill. 2d 398, 401 (1979), where the defendant filed a postconviction petition alleging that the trial court failed to admonish him at the time of his guilty plea that the mandatory parole term was a part of the sentence imposed. The court found that, although it was error for the court to have omitted the admonishment, the defendant was not entitled to relief because he entered an open guilty plea and the sentence imposed, together with the term of mandatory parole, was less than the maximum term to which defendant knew he could have been sentenced. *McCoy*, 74 Ill. 2d at 403.

Subsequent to *McCoy*, the appellate courts of this state have considered numerous claims, both in the context of direct appeals and postconviction proceedings, that a defendant's due process rights were violated by the trial court's failure to admonish the defendant that a term of mandatory supervised release would be added to the term of incarceration. See *People v. Russell*, 345 Ill. App. 3d 16 (2003) (finding that defendant's postconviction petition stated the gist of a constitutional claim that the trial court failed to advise him of mandatory supervised release and remanding to the trial court so that defendant's petition could be advanced to the second stage); *People v. Fish*, 316 Ill. App. 3d 795 (2000) (in a stipulated bench trial, defendant was advised that the maximum penalty was 14 years, but he was sentenced to 14 years plus 2 years MSR and fines; thus, stipulation was not a knowing and intelligent act done with sufficient awareness of the consequences); *People v. Brown*, 296 Ill. App. 3d 1041 (1998) (although defendant entered an open plea, he was admonished as to a maximum sentence, but was sentenced to the maximum plus an MSR term; thus, failure to admonish regarding MSR was not harmless error); *People v. Smith*, 285 Ill. App. 3d 666 (1996) (where defendant agreed to plead guilty in exchange for an 11-year sentence, the failure to advise defendant that a 3-year MSR term would be added to his sentence made his plea unknowing); *People v. Moore*, 214 Ill. App. 3d 938 (1991) (because

defendant negotiated for a predetermined sentence, the failure to admonish him regarding the MSR was error); *People v. Didley*, 213 Ill. App. 3d 910 (1991) (granting defendant postconviction relief because the trial court failed to admonish him that he would be required to serve a term of mandatory supervised release); *People v. O'Toole*, 174 Ill. App. 3d 800 (1988) (defendant entitled to postconviction relief because due process was violated when the court advised defendant that he would be sentenced to " 'a flat ten years' " and did not tell him that a term of mandatory supervised release would be added); *People v. Kull*, 171 Ill. App. 3d 496 (1988) (plain error occurred because defendant pled guilty in exchange for an agreed 22-year sentence, but was given 22 years plus 3 years' mandatory supervised release); *People v. Coultas*, 75 Ill. App. 3d 137 (1979) (no constitutional error occurred because sentence of three years plus mandatory supervised release was less than the maximum five-year sentence defendant was advised could be imposed).

Based on the foregoing, we cannot say that defendant's claim is so novel that it lacked a legal basis prior to *Whitfield*. Rather, our review establishes that there was sufficient case law such that defendant could have raised the claim in his initial postconviction petition. See *People v. Molina*, 379 Ill. App. 3d 91, 98 (2008) (finding that *Whitfield* did not represent a change in the law so as to excuse the untimely filing of the defendant's postconviction petition and to permit him to raise a claim that his due process rights were violated when he entered a fully negotiated guilty plea but was not advised that his sentence included a three-year period of mandatory supervised release). Accordingly, defendant cannot establish "cause" under the cause-and-prejudice test for failing to challenge the trial court's admonishments regarding mandatory supervised release when he first sought postconviction relief.

In reaching this conclusion, we are unpersuaded by defendant's argument that he could not have previously raised his claim because pursuant to *People v. Smith*, 285 Ill. App. 3d 666 (1996), in order to establish a due process violation, he was required to raise a good-faith argument that he would not have pled guilty had he been aware of the MSR term. In *Smith*, 285 Ill. App. 3d at 670, the court held that due process is violated when the court fails to advise a defendant of MSR only if the court told the petitioner he would receive a specific sentence of incarceration upon a guilty plea, if the court sentenced the petitioner to a term greater than the agreed term, including any period of MSR, and if the petitioner raised a good-faith argument that he would not have pled had he been fully and correctly informed by the court of his potential sentence. As defendant in this case points out,

our supreme court in *Whitfield* rejected the appellate court's holding in that case that, based upon *Smith*, a due process violation was not shown because the defendant did not raise a good-faith argument that he would not have pled guilty had he been aware of the MSR term. See *Whitfield*, 217 Ill. 2d at 195-97.

■ We are unpersuaded that defendant could not have raised this claim in his initial petition merely because the case law was unfavorable to his position at the time. Defendant seems to suggest that his claim could not have been raised because it was not certain that he would have prevailed. However, the mere possibility that defendant's claim would have been unsuccessful does not equate to an "object factor" which precluded him from raising it in his initial postconviction petition. See *People v. Leason*, 352 Ill. App. 3d 450, 454 (2004) ("[T]he lack of precedent for a position differs from 'cause' for failing to raise an issue, and a defendant must raise the issue, even when the law is against him, to preserve it for review"); *Molina*, 379 Ill. App. 3d at 99 ("A criminal defendant cannot sit idly back waiting for our supreme court to decide an issue potentially relevant to his case"). Moreover, in *Whitfield*, the court did no more than review the decisions that *Smith* purported to rely upon and conclude that "[c]learly, neither [of those decisions] supports the holding in *Smith* that, where a defendant enters a negotiated guilty plea for a specific sentence, a finding that due process has been violated is contingent on the defendant's ability to demonstrate that he would not have pled guilty had he known about the MSR." *Whitfield*, 217 Ill. 2d at 196-97. Likewise, we see no reason why defendant in this case could not have also reviewed those decisions and made a good-faith argument that they did not support the holding in *Smith*. Accordingly, we find that the decision in *Smith* does not establish cause for defendant's failure to raise his claim in his initial petition.

Similarly, we find unpersuasive defendant's assertion that *Whitfield* established a new remedy for insufficient MSR admonishments and that, prior to *Whitfield*, a defendant who raised this issue risked the vacatur of his guilty plea and an increased sentence upon a new conviction. Again, defendant improperly equates the lack of a specific precedent with "cause" for failing to raise an issue in his initial postconviction petition. See *Leason*, 352 Ill. App. 3d at 454; see also *Molina*, 379 Ill. App. 3d at 99 (stating that, with respect to the remedy announced in *Whitfield*, "a change in available remedies does not represent a change in law that would excuse the untimely filing of a postconviction petition").

Moreover, we find that the legal foundation for the remedy defendant seeks existed long before *Whitfield*. As noted, the defendant

in *Whitfield* initially argued that the appropriate remedy was to eliminate the period of mandatory supervised release or to reduce his 25-year sentence by the length of the MSR term. The defendant later acknowledged that a term of supervised release was mandated by statute and legally could not be struck and therefore requested that his 25-year sentence be reduced to 22 years plus 3 years of mandatory supervised release. The court found that, "[a]fter reviewing decisions by courts in other jurisdictions," the remedy sought by the defendant was appropriate. *Whitfield*, 217 Ill. 2d at 203. The court initially noted that the Supreme Court in *Santobello* provided for two possibilities when a defendant does not receive the benefit of his plea bargain with the State: he may be given the opportunity to withdraw his guilty plea or he may seek to enforce the promise that was made to him. *Whitfield*, 217 Ill. 2d at 202, citing *Santobello*, 404 U.S. at 262-63, 30 L. Ed. 2d at 433, 92 S. Ct. at 499. The court further noted that in *Lane v. Williams*, 455 U.S. 624, 71 L. Ed. 2d 508, 102 S. Ct. 1322 (1982), the Supreme Court agreed that, under circumstances almost identical to those in *Whitfield*, the two forms of relief available to the defendant were either withdrawing his guilty plea and pleading anew or seeking specific performance of the plea agreement as he understood it by eliminating the mandatory parole term from his sentence. *Whitfield*, 217 Ill. 2d at 202. The court then proceeded to review numerous other decisions in which a defendant's guilty plea was induced by an unfulfilled promise and the court concluded that the defendant was entitled to either withdraw his guilty plea or have his sentence modified to approximate the term contemplated by the plea agreement. See *James v. State*, 699 N.W.2d 723 (Minn. 2005); *State v. Jumping Eagle*, 620 N.W.2d 42 (Minn. 2000); *Commonwealth v. Zuber*, 466 Pa. 453, 353 A.2d 441 (1976); *Ferris*, 551 F.2d at 187; *United States v. Bowler*, 585 F.2d 851, 856 (7th Cir. 1978); *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 557 (2002). We note that all of these decisions except for one were issued prior to when defendant filed his initial postconviction petition. In addition to these cases, we note that the court in *Baker* provided a remedy that is similar to those discussed above and that speaks to defendant's concern in this case that had he brought his claim prior to *Whitfield*, he risked vacating his guilty plea and receiving a greater sentence upon a new conviction. In *Baker*, after finding that the defendant's guilty plea was unfairly induced by an unfulfilled promise of a particular sentence, the court stated:

> "Under the circumstances of this case it would be unjust to simply vacate the guilty plea, which theoretically would allow the state to reindict Baker. Since he has already performed his side of the bargain, fundamental fairness demands that the state be

compelled to adhere to the agreement as well. See *Santobello*, 404 U.S. at 262, 92 S. Ct. 495. Accordingly, Baker should be released from custody." *Baker*, 551 F.2d at 184.[3]

In light of the case law discussed above, we conclude that sufficient precedent was available at the time defendant filed his initial postconviction petition such that he could have made a good-faith argument that the appropriate remedy for the trial court's alleged error was to require specific performance of the terms of the plea agreement as he understood it and to therefore reduce his sentence by the period of mandatory supervised release. In point of fact, we note that this is precisely the remedy sought by the defendant in *Whitfield*, who clearly did not have the benefit of our supreme court's decision in that case. For this reason and for all of those discussed above, we conclude that defendant cannot establish "cause" for failing to raise his claim in his initial postconviction petition. For this reason alone, we find that defendant's successive postconviction petition is procedurally barred.

We also find that defendant cannot show actual prejudice from his claimed error. Significantly, in *Whitfield*, the court recognized that whether a defendant's due process rights are violated by a trial court's failure to admonish the defendant regarding the MSR term depended on whether the defendant entered an "open" guilty plea or whether he entered a negotiated plea agreement for a specific sentence. *Whitfield*, 217 Ill. 2d at 193-95. Due process is violated when a defendant negotiated a plea agreement in exchange for a specific sentence and the trial court failed to advise him regarding the MSR term. *Whitfield*, 217 Ill. 2d at 194-95. The failure to admonish a defendant regarding the MSR term is not a due process violation, however, where the defendant enters an open guilty plea and the trial court admonishes him regarding the maximum sentence he could receive so long as the sentence plus the MSR term is less than the maximum sentence that the defendant was told he could receive. *Whitfield*, 217 Ill. 2d at 193.

The court in *Whitfield* cited with approval to its decision in *McCoy*, where the court rejected the defendant's claim that the court's failure to admonish him regarding the MSR term was *per se* a constitutional violation entitling him to postconviction relief. There, the court held that "defendant understood that the *quid pro quo* for the plea of guilty was the recommendation that there be concurrent sentences of 1 to 3 years, that defendant knew that the court was not

---

[3]Baker had served his sentence and was in jail on a parole violation when he filed his motion for a writ of *habeas corpus* and he was on parole at the time the court issued its decision. See *Baker*, 551 F.2d at 182.

bound to accept the recommendation and could sentence defendant to a term of not less than.1 nor more than 20 years." *McCoy*, 74 Ill. 2d at 403. The court further held that the defendant was not denied a substantial constitutional right or the benefit of the bargain because the State promised only to recommend a sentence and the sentence the defendant received, along with the mandatory parole period, was less than the maximum sentence he was told he could receive. *McCoy*, 74 Ill. 2d at 403. In *Whitfield*, the court also explained how its decision in *McCoy* turned on the fact that the defendant's negotiated plea agreement had been for a sentencing recommendation:

> "Distinguishing *Baker* and *Ferris* from the situation in *McCoy*, we held that *Baker* and *Ferris* differed in that the defendants' negotiated plea agreements in those cases had been, not just for a sentencing *recommendation*, but for the promise of a particular prison sentence. Thus, in *McCoy*, we suggested that the result might have been different had McCoy's negotiated plea been for the promise of a specific sentence." *Whitfield*, 217 Ill. 2d at 193.

This distinction was applied most recently by this court in *People v. Adams*, 373 Ill. App. 3d 991, 996 (2007), where the court found that the defendant did not enter a fully negotiated guilty plea, as he did not agree to plead guilty in exchange for a specific sentence. Rather, "[a]t the guilty plea hearing, defense counsel informed the trial court that 'after conveying the Court's offer to [defendant], [defendant] has agreed to withdraw his previously entered plea of not guilty *** and enter a plea of guilty to each charge." *Adams*, 373 Ill. App. 3d at 996. The court then advised the defendant of the possible sentencing range for each charge and of the maximum sentence he could receive. The court sentenced defendant without advising him of the three-year MSR term. *Adams*, 373 Ill. App. 3d at 996. The court held that the defendant was not denied due process because "his guilty plea was not entered in exchange for a specific sentence and his sentence plus the three-year MSR term was less than the maximum sentence he could have received." *Adams*, 373 Ill. App. 3d at 995.

Applying these principles to the facts of this case, we conclude that defendant was not denied due process by the court's failure to admonish him that his term of mandatory supervised release would be three years. Initially, defendant did not plead guilty in exchange for the promise of a specific sentence. Although the parties and the court initially conducted a Rule 402 (177 Ill. 2d R. 402) conference, the record shows that the parties modified the agreement on their own without participation from the court. Specifically, when the parties appeared in court, the trial court stated that "[w]e did a [Rule] 402 conference, but basically there has now been an offer?" The parties

confirmed that there had been a negotiated offer and the court then noted that "[a]lthough we started a conference, and we are within the boundaries of my conference, but you fine tuned it now on your own?" The record further shows that the trial court confirmed that agreement but did not promise defendant that it would impose the recommended sentence. Specifically, the court advised defendant as to the minimum and maximum sentence he could receive for each charge and told defendant that, with respect to aggravated kidnapping, "*whatever sentence I give you* must be served 85 percent," and that "*if I did* sentence you to 14 years in the penitentiary *as suggested by the State and your attorney*, you would have to serve 11.9 of those years." (Emphasis added.) Defendant indicated that he understood these admonishments. Subsequently, the court explained the nature of consecutive sentences to defendant and told him that "*if I sentence you this way*, the four years would be first." (Emphasis added.) The court also asked defendant if anyone had made any promises to him about what the court would do if he pled guilty "*apart from the recommended plea agreement*," and defendant responded in the negative. (Emphasis added.) After the court accepted defendant's plea, the court stated that the plea it was taking was based upon "discussions between your attorney and the State on *negotiated plea recommendation— recommended disposition* to the court, I find it to be a *reasonable recommendation*. And I am going to go along with the *recommendation*." (Emphasis added.)

Based on the foregoing, it is clear that defendant pled guilty only in exchange for the State's recommendation to the trial court that it sentence defendant to consecutive terms of 4 and 14 years' imprisonment. The trial court neither participated in nor ratified the agreement between the parties and the court made it clear to defendant that the negotiated agreement between his attorney and the State was only a recommendation that the court was not bound to follow. The court also advised defendant that he could be sentenced up to 30 years in prison on the aggravated kidnapping charge and up to 15 years on the possession charge. In sum, the trial court did not promise defendant he would be sentenced to a specific term if he pled guilty and fully advised defendant as to the possible range of sentences he could receive. Moreover, defendant was sentenced to only 15 out of a possible 30 years' imprisonment for aggravated kidnapping and to the minimum term of 4 years' imprisonment for possession of a controlled substance. Therefore, defendant's sentence plus the three-year MSR period was significantly less than the maximum sentence he could have received. Accordingly, similar to the defendant in *McCoy*, defendant in this case received the benefit of the bargain he made

with the State and the court's failure to advise defendant that the MSR period was three years, even if erroneous, was not a constitutional violation. Accordingly, we conclude that defendant cannot establish that he was prejudiced by failing to raise his claim in his initial postconviction petition. For this reason alone, defendant's claim is procedurally barred and may not be raised in a successive postconviction petition.

In reaching this decision, we recognize that the trial court in this case proceeded to rule directly on the merits of defendant's successive petition and did not address whether defendant satisfied the cause-and-prejudice test. This was error, as the court should have ruled on this procedural matter before considering the merits. However, we review the judgment of the trial court, and not its reasoning, and therefore we may affirm the judgment below on any basis supported by the record. See *People v. Rajagopal*, 381 Ill. App. 3d 326, 329 (2008).

Moreover, even if we were to find that defendant satisfied the cause-and-prejudice test in order to raise his claim in a successive petition, which we do not, we would also find that the petition would fail on the merits. At the second stage of proceedings under the Act, defendant's petition, supported by the trial record and any accompanying affidavits, must make a substantial showing of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 381 (1998).

As previously discussed, the court in *Whitfield* noted that substantial compliance with Rule 402 is sufficient to establish due process but that there is no substantial compliance with Rule 402 when the trial court fails to advise the defendant, prior to accepting his guilty plea, that he would be subject to "a mandatory supervised release term" following his term of imprisonment. *Whitfield*, 217 Ill. 2d at 195. Unlike the circumstances in *Whitfield*, where the court completely failed to mention MSR, in this case, prior to accepting defendant's guilty plea, the trial court admonished defendant that for each crime with which he was charged he would be subject a term of imprisonment, a fine, and "a period of mandatory, supervised release." We believe that the trial court's admonishments substantially complied with the requirements of Rule 402 and were sufficient to establish due process. We note that this case is also distinguishable from *Whitfield* in that the defendant in that case alleged in his petition that it was not until he was in prison that he learned that a three-year MSR term had been added to his sentence. *Whitfield*, 217 Ill. 2d at 180, 188. In this case, defendant has never alleged, either by way of his petition or an affidavit, that he was unaware of the mandatory three-year MSR term. However, he does claim that he did not agree to a three-year MSR term. This is a distinction without a difference. Under these

914

circumstances, we conclude that defendant's petition, were it not procedurally barred, would be subject to dismissal for failure to make a substantial showing of a constitutional violation.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

O'MALLEY, P.J., and CAHILL, J., concur.